**MADDOCK & MILLER, INC., Plaintiff-Appellant,**

v.

**UNITED STATES LINES, Defendant-Appellee,**

and

Mayer China Company, Fine China Associates, Inc., Bart Miller (formerly known as Herbert W. Mueller), William P. C. Adams, Schmid Bros. Inc., Paul A. Schmid, Shenango China Company, Defendants.

**No. 221, Docket 29854.**

United States Court of Appeals Second Circuit.

Argued Jan. 12, 1966.

Decided March 31, 1966.

W. Harvey Mayer, New York City (Friedlander, Gaines & Ruttenberg, New York City, on the brief), for plaintiff-appellant.

Louis J. Gusmano, New York City (James R. Campbell and Kirlin Campbell & Keating, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and MEDINA and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

Maddock & Miller, Inc., appeals from a dismissal of that portion of its complaint which claimed damages from the United States Lines. The district court's action was based on its belief that primary jurisdiction was vested in the Federal Maritime Commission. Although we agree with the district court that the claims were within the primary jurisdiction of the Commission, we hold that the court should have retained jurisdiction over the action and stayed its proceedings. We therefore reverse the order dismissing plaintiff's claims against this defendant.

The basis of plaintiff's complaint is the claim that certain of its competitors and customers conspired unlawfully to deprive it of business in violation of the Sherman Act, 15 U.S.C. § 1 and the Shipping Act, 46 U.S.C. § 812. Part of the scheme alleged is that United States Lines, bowing to illegal pressure and coercion, switched its purchases of chinaware from plaintiff to defendant Fine China Associates, Inc., in order to fore-

stall the other defendants from carrying out a threat to employ different shipping facilities to transport the chinaware they manufactured.

The complaint asserts three independent causes of action. The first count, against appellee United States Lines and seven other defendants, in the main charged violations of the Sherman Act. The second count alleged violations of the Sherman Act by all the defendants except the United States Lines. The third count, naming only the United States Lines, charged that it received a rebate in violation of the Shipping Act.

The district court held that the issue presented by the Shipping Act was within the primary jurisdiction of the Federal Maritime Commission and that the questions arising under the Sherman Act were also cognizable in the first instance by that agency since they originated in conduct which was subject, at least in part, to the regulatory scheme administered by the Commission. Therefore, it dismissed both counts against the United States Lines and stayed the actions against the other defendants pending the outcome of proceedings before the Commission.[1]

■ " 'Primary jurisdiction' * * * applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. Western Pacific R. R. Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

■ A determination of whether a carrier's purchase of supplies from a shipper solely in order to retain the shipper's business constitutes a rebate, as alleged in the third count, calls for consideration by the agency entrusted with the administration of the regulatory scheme devised by the Congress.[2] Although this question is not so clearly a matter requiring administrative expertise as the determination of whether a rate is "unreasonable," Texas and Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), it still is more than a matter of mere interpretation of an issue "solely of law." See Great Northern Ry. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922). Resolution of this issue may well depend on an appraisal of the economic effect upon the carrier's shipping rates of the price paid for the tied supplies; this in turn may require an inquiry into the profit earned on the chinaware and whether it significantly alters the cost of shipping on the line. Such an inquiry can best be made by the Commission. Furthermore, a determination that a carrier's agreement to purchase supplies from a shipper constitutes a rebate might have widespread impact upon the whole regulatory scheme. Conceivably, such agreements would then become subject to the Shipping Act's registration provisions and to the regulatory supervision of the Commission over tariffs. The feasibility of such an expansion of the Commission's activities is a matter which should be decided in the first instance by the agency charged with the administration of the statute. Therefore, we agree with the district court that the third count stated a claim within the primary jurisdiction of the Federal Maritime Commission.

1. An appeal by Maddock & Miller from the stay against the other defendants was dismissed by another panel of this court, October 4, 1965, because it was from a non-final order.

2. Although paragraph 28 under the third count alleges that the appellee received a rebate, paragraph 27 incorporates the eighth and ninth paragraphs from the first count which alleges that the United States Lines gave a rebate to the shippers. The allegations of coercion in the first count will, of course, be relevant to determining whether it was the seller or the buyer who had the economic power necessary to extract a rebate and if it was exerted.

While not entirely free from doubt, it would appear that the first count charges a violation of the Sherman Act,[3] and not of the Shipping Act. Although the plaintiff asserts that the United States Lines' activities violated § 812, that allegation is merely incidental to the Sherman Act claim since triple damages are sought not only against the other defendants but also from the United States Lines. Appellant apparently seeks to hold the carrier liable as a party to an agreement in restraint of trade even though conceding that the carrier "consented" only under threat and irrespective of whether the carrier's agreement was a rebate.

Unlike the third count, therefore, which involved merely the allocation of decision making between two bodies with concurrent jurisdiction to apply the same law, this count involves two overlapping statutory schemes, both of which may be applicable to a situation where the Commission is without authority to enforce one of them—the antitrust laws.

█ Courts should defer to the appropriate administrative agency in such a situation when "protection of the integrity of a regulatory scheme" is involved. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932).

Protection of the regulatory scheme ordinarily has required referral to an agency when the Shipping Act or some other statute might immunize activities which would otherwise be unlawful under the Sherman Act, e. g., Far East Conference v. United States, supra; Carnation Co. v. Pacific Westbound Conference, 383 U.S. 213, 86 S.Ct. 781, 15 L.Ed.2d 709 (March 1, 1966), modified, 383 U.S. 932, 86 S.Ct. 781, 15 L.Ed.2d 851 (March 8, 1966). In the *Carnation* case a shipper charged that carriers had entered a price fixing agreement, in violation of the Sherman Act, which was not immunized by the Shipping Act because of failure to comply with its provisions. The FMC intervened to assert its primary jurisdiction, noting that it had already begun an investigation into that very matter. The Court of Appeals affirmed the dismissal of the district court. The Supreme Court reversed, holding that the district court should have retained jurisdiction over the Sherman Act claim and stayed—not dismissed—the suit pending the outcome of the Commission's proceedings. "The Far East and Cunard principles permit courts to subject activities which are clearly unlawful under the Shipping Act to antitrust sanctions so long as the courts refrain from taking action which might interfere with the Commission's exercise of its lawful powers. * * * [those]

3. According to the first count of the complaint:

"First: This action is brought pursuant to Sections 1, 13, 15 and 26 of Title 15 of the United States Code * * *."

"Eighth: Nevertheless, defendants Fine China Associates, Inc., W. P. C. Adams, Schmid Bros. Inc., Paul A. Schmid and Shenango China Company threatened the defendant United States Lines that if United States Lines did not purchase its chinaware through Fine China Associates, Inc., the aforementioned defendants would take their shipping business elsewhere, and would induce their affiliated companies to ship on lines other than United States Lines."

"Ninth: In or about the month of March, 1963, the defendant United States Lines, in response to the aforementioned threats, agreed to purchase

its chinaware through Fine China Associates, Inc. despite the fact that by doing so it would be violating Section 812 of the Shipping Act (Title 46, United States Code) in that the resulting agreement constituted a deferred rebate to the defendant Fine China Associates, Inc. and its affiliated companies, as the term is defined in the aforesaid Section 812."

"Fourteenth: All of the foregoing acts constitute a conspiracy in restraint of trade, are violative of the laws of the United States, as indicated, and are also prohibited by Section 1 of Title 15 of the United States Code."

For these and other acts specified in the complaint the plaintiff sought recovery "on the first cause of action, for triple damages in the amount of Seven Million Five Hundred Thousand Dollars ($7,500,-000)."

principles only preclude courts from awarding treble damages when the defendants' conduct is arguably lawful under the Shipping Act." 86 S.Ct. at 786.

In the case at bar, the issue is not the typical one whether an unlawful practice can be immunized by the Shipping Act but the converse—whether an act which might not violate the Sherman Act is unlawful under the Shipping Act because it constitutes granting an illegal rebate in violation of the regulatory statute. Because it does not appear that this agreement could come under any protective umbrella of the Maritime Commission, a finding by a district court that the agreement violated the Sherman Act would not seem to "interfere with the Commission's exercise of its lawful powers," Carnation Co. v. Pacific Westbound Conference, supra, if that were to be interpreted narrowly.

But reference to an administrative agency is not restricted to situations when the agency has the power to immunize, as the subsequent history of the *Far East* litigation demonstrated when the court held the agency was without power to immunize the dual system of rates under attack. Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 78 S.Ct. 851, 2 L.Ed.2d 926 (1958). As in that case, investigation of the factual issues can often be handled best by the administrative agency in the light of its extensive experience in dealing with the industry. See United States Navigation Co. v. Cunard S.S. Co., supra; Jaffe, Judicial Control of Administrative Act, 132–133. Whether the agreement to change suppliers constituted a rebate is not dispositive of the Sherman Act question but it may have an important bearing on the issue. The reasons we assigned for deciding the rebate question in the third count should first be passed upon by the Maritime Commission apply equally here. Although when the administrative decision is on a matter as peripheral to the issue before the court as it

is in this case and when there are other defendants involved, intervention by the Commission in the court proceedings may be more advisable than an independent proceeding before the agency, we do not think that the referral to the Maritime Commission was inappropriate. Therefore we agree with the decision of the district court holding that the subject matter of the first count lay within the primary jurisdiction of the FMC.

Carnation Co. v. Pacific Westbound Conference, supra, makes it clear, however, that the dismissal of counts one and three against this defendant was erroneous. Plaintiff seeks damages for past violations of both statutes. Dismissal is only appropriate when it does not prejudice the plaintiff's right to a full remedy, as when an injunction is sought against continuing conduct. "But a treble damage action for past conduct cannot be easily reinstituted at a later time. Such claims are subject to the Statute of Limitations and are likely to be barred by the time the Commission acts. Therefore, we believe that the Court of Appeals should have stayed the action instead of dismissing it." *Carnation Co.*, supra, 86 S.Ct. at 787. We are satisfied that *Carnation* not only controls the Sherman Act count in this case but also indicates that the third count should not have been dismissed because Section 821 of the Shipping Act provides for full reparations only if the complaint was filed with the Board within two years, a period which expired March 1965. Therefore, we think the district court should retain jurisdiction of the third count in order to ensure a full and adequate remedy if the Commission determines that the defendant did violate the Shipping Act.

The judgment of the district court dismissing the complaint against the defendant United States Lines is reversed and the case is remanded for further proceedings not inconsistent with this opinion.