**PANHANDLE EASTERN PIPE LINE COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 16499.**

United States Court of Appeals Third Circuit.

Argued Oct. 3, 1967.

Decided Nov. 29, 1967.

---

Raymond N. Shibley, Patterson, Belknap, Farmer, Shibley & Wells, Washington, D. C., for petitioner.

William Arkin, Federal Power Commission, Washington, D. C., (Richard A. Solomon, Gen. Counsel, Peter H. Schiff, Solicitor, Israel Convisser, Federal Power Commission, Russell B. Mamone, Washington, D. C., on the brief), for respondent.

William J. Grove, Philip R. Ehrenkranz, Washington, D. C., for amicus curiae, H. K. Porter Co., Inc., Paul R. Obert, Secretary and Gen. Counsel, H. K. Porter Co., Inc., Pittsburgh, Pa., Grove, Jaskiewicz & Gilliam, Washington, D. C., of counsel.

Charles F. Wheatley, Jr., Robert L. McCarty, Billy Dwight Perry, McCarty & Wheatley, Washington, D. C., W. C. Whitlow, Whitlow & Riley, Fulton, Mo., for amicus curiae, City of Fulton, Missouri.

Before STALEY, Chief Judge, and MARIS and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

In this proceeding the court is asked by Panhandle Eastern Pipe Line Company to review an order of December 23, 1966 and an amending order of February 14, 1967 issued by the Federal Power Commission. The proceeding had its origin in an application filed August 13, 1965 by Panhandle for a certificate of public convenience and necessity for the construction and operation of additional pipeline facilities required to furnish natural gas to a new refractories plant, then under construction, of H. K. Porter Company in what later became a part of the City of Fulton, Missouri. Panhandle had contracted to supply Porter with up to 3,000 Mcf per day, on an interruptible basis, at 40 cents per Mcf.

Panhandle owns and operates a 6 inch lateral pipeline from a point on its main transmission lines in Audrain County, Missouri, to the City of Fulton, which is situate in Callaway County, Missouri, a distance of 21.4 miles. This line was constructed in 1931 to serve the Harbison-Walker Refractories Company in the City of Fulton, and through it Panhandle directly supplies Harbison-Walker with interruptible gas. Five years later the City constructed a municipal gas distribution system and thereafter Panhandle through the same lateral supplied the City with the gas it needed.

Deeming its existing lateral of insufficient capacity to supply the gas required by Porter in addition to that supplied to its existing customers, Panhandle applied to the Commission for authority to construct an 8 inch pipeline to loop the existing lateral for a distance of 14.1 miles. It also sought Commission approval for the construction of a 4 inch pipeline 1.25 miles long to connect the existing lateral with the Porter refractory and a metering and regulating station. About five weeks after the expiration of the time which the Commission had fixed for filing petitions to intervene in the proceeding the City of Fulton filed such a petition. In its petition the City asserted that it desired and was able, through a pipeline to the plant which it had constructed, to supply the gas needs of the Porter plant at a lower rate than that proposed by Panhandle and it requested an order requiring Panhandle to sell gas to it for resale to Por-

ter. The City offered to build its own pipeline to intersect Panhandle's existing lateral, if Panhandle should refuse to expand its capacity and it requested a certificate therefor. Although opposed by Panhandle as untimely the intervention of the City was granted by the Commission which set the case for hearing. Panhandle's petition for rehearing of the order granting intervention by the City was denied on March 14, 1966, the Commission stating that the City was competing with Panhandle for the right to sell gas to Porter and, although it had not technically complied with the requirement that it file a formal application, all the data which the regulations required the City as an applicant to furnish were being supplied in the hearing of the case then taking place. In the order the Commission stated that the City had the burden of proof and if at the conclusion of the hearing it had not met its burden Panhandle might move to dismiss its application.

On June 30, 1966 Panhandle requested a temporary certificate to build and operate the 1.25 miles line from its existing lateral to the Porter plant to enable it to serve that company to the extent of the lateral's capacity during the pendency of the proceedings on Panhandle's application for a permanent certificate. The City opposed this application and offered to permit Panhandle to serve Porter through the City's connection until decision on the merits should be reached. Alternatively, the City requested a temporary allocation of gas under Panhandle's interruptible rate schedule to permit the City to serve Porter. The Commission on August 10, 1966 refused to authorize the construction of the 1.25 miles line but issued a temporary certificate authorizing Panhandle to transport and deliver through the City's distribution facilities up to 3000 Mcf per day for direct sale by Panhandle to Porter. Panhandle declined to accept the temporary certificate, however, and the City, at Porter's request, commenced serving that company from its allocation under its existing contract with Panhandle.

Following the formal hearings the hearing examiner filed an initial decision on June 21, 1966 generally approving Panhandle's project and finding the City's proposals to be inadequate and economically infeasible. The examiner's initial decision was not adopted by the Commission, however, which on December 23, 1966 filed its opinion and order in which it found the proof submitted by both Panhandle and the City inconclusive and the record inadequate to permit a final decision on the merits. The Commission issued a certificate to Panhandle authorizing the construction of the 14.1 miles loop, but not the 1.25 miles line to connect its lateral with the Porter plant. It also directed Panhandle to sell to the City on an interruptible basis the gas needed by Porter until the Commission should otherwise order. The Commission's order gave Panhandle the option of accepting or declining the certificate which authorized the looping of the lateral, and, in case of refusal, provided that the proceedings should be remanded to an examiner for further hearing. In this connection the Commission stated in its decision:

> "If Panhandle declines the Certificate, the further proceedings which will be required can yield a record on capacity, looping, lateral line policy, and related matters, to enable a resolution of all legal and policy questions." 36 F.P.C. 1107, 1110.

Panhandle filed an application for reconsideration which the Commission, after making minor modifications in the order of December 23, 1966, denied by opinion and order entered February 14, 1967. Panhandle declined the certificate proffered by the order of December 23, 1966, which action rendered that order inoperative except as it provides for the sale of additional gas by Panhandle to the City pending further order of the Commission. The proceedings were accordingly remanded and are now before a hearing examiner of the Commission.

Panhandle urges in this court that the Commission erred (1) in that it violated its own published rules and regulations in

permitting the City's untimely intervention and in considering its informal application for the allocation of gas to serve Porter, (2) in that it violated its prior order of March 14, 1966 in this proceeding by not dismissing the City's application when it failed to meet its burden of proof, and (3) in that it violated section 7(a) of the Natural Gas Act, 15 U.S.C.A. § 717f(a), and section 5(a) of the Administrative Procedure Act, now 5 U.S.C. § 554(b), by failing to give notice to Harbison-Walker of the City's application and by its order directing Panhandle to supply gas to the City for sale to Porter which would impair its ability to render service to Harbison-Walker. We have considered all of these contentions and find them to be without merit.

■■■ Panhandle had no right to have its application granted merely because no one had protested or intervened in opposition within the period fixed by the Commission for such action. Proceedings before the Commission are not private law suits in which a plaintiff wins by default if a defendant fails to appear and defend. On the contrary the public interest is always involved and the Commission, as its guardian, must determine in every proceeding whether the certificate applied for is in the public interest or whether that interest calls for some other disposition. The Commission must see to it that the record is complete and that all relevant facts are before it. Udall v. F. P. C., 1967, 387 U.S. 428, 87 S.Ct. 1712, 18 L.Ed.2d 869. Thus, whether or not the City had applied for or been granted intervention, the Commission was free, in determining where the public interest lay, to permit the City to submit evidence and participate in the proceeding. We are clear that it was not error in the circumstances of this case for the Commission to permit late intervention by the City. For the same reasons it was fully within the power of the Commission in the exercise of its discretion to entertain the City's informal application, which was included in its intervention petition, for the allocation of additional gas for resale to Porter and to permit the City to supply at the hearing rather than

with its application the substantiating data called for by the regulations.

In its order of March 14, 1966 denying rehearing of its action granting the City the right to intervene the Commission pointed out that in this case the City has the burden of proof and if at the conclusion of the hearing the City has not met its burden Panhandle may move to dismiss the City's application. Thereafter Panhandle did move to dismiss and urges as error the refusal of the Commission to grant its motion. The short answer to this contention is that the Commission has not refused to grant the motion but has merely postponed action on it. For in its opinion and order of December 23, 1966 the Commission pointed out that the record was very unsatisfactory and that if Panhandle declined the limited certificate which the Commission authorized, as it subsequently did, the evidence offered at the further proceedings, which the Commission ordered in that event and which are now taking place, could yield a record upon which all the legal and policy questions in the case might be resolved. Among the principal questions thus deferred for consideration on a fuller record are which of the applications, that of Panhandle or that of the City, should be granted and which dismissed.

■■ Panhandle complains that notice was not given to Harbison-Walker of the City's application for gas to serve Porter, as required by section 7(a) of the Natural Gas Act and section 5(a) of the former Administrative Procedure Act and that the order directing Panhandle to supply additional gas to the City to serve Porter will impair its ability to render adequate service to Harbison-Walker in violation of section 7(a) of the Natural Gas Act. It will be observed that these contentions are made by Panhandle alone and not by Harbison-Walker, which company is not a party to the proceedings and has never sought intervention. So far as lack of notice to Harbison-Walker is concerned we think it is for that company to raise the question. Certainly Panhandle has not been prejudiced thereby. The alleged impairment of Panhandle's ability to serve Harbison-Walker is said to result

from the Commission's order. But that order, as we have seen, is an interim order to provide for Porter's needs pending final determination of the proceeding. We cannot say that it is unreasonable or in any way improper for that purpose.

The availability of the City's existing connection between its distribution system and the Porter plant made it unnecessary and undesirable to authorize temporarily the construction of a line from Panhandle's lateral to the Porter plant, a line which would prove useless if the Commission should finally decide that Porter should be served by the City. Utilization of the City's facilities made possible a temporary arrangement which, while not wholly satisfactory to all the parties, nevertheless substantially accommodated the basic interests of each. Since the capacity of Panhandle's lateral has not been expanded, the interruptible supplies to the City and through it to Porter might be subject to some curtailment but, that apart, Porter has been enabled to commence and continue operations and the City has been enabled to increase its sales. Panhandle, although temporarily not permitted to sell directly to Porter, has been enabled, without the cost of expanding its facilities, to sell at its filed rates increased quantities of gas to the City for resale to Porter. Since the record of the initial hearings proved inadequate upon which to base a satisfactory final determination, an interim order such as the Commission entered, was essential if Porter was to receive gas with which to operate. So far as concerns the impairment alleged by Panhandle in its ability to render adequate service to Harbison-Walker we find nothing to indicate that substantial impairment will result from the interim order. Harbison-Walker has not appeared or made such a suggestion and the record indicates that, in any event, the gas which Panhandle furnishes to it is interruptible gas, as to which its right is merely to be treated equally with all other interruptible customers.

The orders of the Commission will be affirmed.