**AKERS MOTOR LINES, INC.,** Johnson Motor Lines, Inc., and McLean Trucking Company, Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants,

and

**Malone Freight Lines, Inc.,** Intervening Defendant.

Civ. No. 2236.

United States District Court
W. D. North Carolina.

June 4, 1968.

Francis W. McInerny and James Lawson, Macdonald & McInerny; Donald E. Cross and Thomas M. Knebel, Rea, Cross & Knebell, Washington, D. C., and Charles T. Myers, Myers & Sedberry, Charlotte, N. C., for plaintiffs.

Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Department of Justice, Washington, D. C., and William Medford, U. S. Atty., Asheville, N. C., for defendant United States of America.

Robert W. Ginnane, General Counsel, and Henri F. Rush, Jr., Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Beverley S. Simms, Rhodes & Simms, Washington, D. C., and Robert R. Williams, Jr., Williams, Williams & Morris, Asheville, N. C., for intervening defendant.

Before CRAVEN, Circuit Judge, and WARLICK and STANLEY, District Judges.

CRAVEN, Circuit Judge:

This appeal is taken from an order of the Interstate Commerce Commission discontinuing an investigation instituted by the Commission under sections 204 (c), 49 U.S.C.A. §§ 304(c) and 212(a), 49 U.S.C.A. § 312(a), of the Interstate Commerce Act into certain practices of Malone Freight Lines, Inc., the intervening defendant in this court. Jurisdiction is founded on sections 1336, 1398, 2284 and 2321 through 2325 of Title 28, United States Code. The order of the Commission dated May 4, 1966, is annulled and set aside and the case is remanded to the Commission for further proceedings.

The chronology of events in this case began in 1942 with the acquisition by G & M Transfer Co., Inc., of a certificate of public conveyance[1] which had

---

1. G & M Certificate dated September 5, 1942:

\* \* \* \* \*

IT IS FURTHER ORDERED, That the transportation service to be performed by the said carrier in interstate or foreign commerce shall be as specified below:

*General commodities*, except those of unusual value, and except dangerous explosives, commodities in bulk, and those requiring special equipment, over irregular routes,

From Elkin and Statesville, N. C., to points and places in Delaware, Georgia, Maryland, New Jersey, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia, District of Columbia, those in Tennessee on, east, and south of a line beginning at the Georgia–Tennessee State line and extending along U. S. Highway 27 to junction U. S. Highway 70, thence along U. S. Highway 70 to Knoxville, Tenn., thence along U. S. Highway 11W to the Tennessee–Virginia State line, and those in New York on and south of a line beginning at Oswego and extending along U. S. Highway 104 to Mexico, N. Y., thence along New York Highway 69 to Rome, New York, thence along New York Highway 49 to Utica, thence along New York Highway 5 to Schenectady, N. Y., thence along New York Highway 7 to Troy, N. Y., and thence along New York Highway 2 to the New York–Massachusetts State line.

From the above-described destination points to points and places in North Carolina.

been acquired by G & M's predecessor under the grandfather provision of the Motor Carrier Act of 1936, 49 U.S.C.A. § 306. The differences between the relevant portion of this certificate and the certificate of Malone Freight Lines, Inc., now at issue, are insubstantial. In essence they both confer on the carrier authority to transport general commodities over irregular routes from Elkin and Statesville, North Carolina, to points and places in a described eleven state area, and from points and places in the eleven state area to points and places in North Carolina. The problem of construction which is now before us to review is occasioned because two sub-paragraphs were used in the certificates to describe the base area for outbound traffic (Elkin and Statesville) and the base area for inbound traffic (all of North Carolina).

In 1942 G & M filed a petition with the Commission for clarification of the scope of authority granted to it, contending that the language used authorized service *between* points and places in the eleven state area by "tacking" the common points of Elkin and Statesville, North Carolina. This construction of the certificate would have authorized "cross-haul" service between points within the eleven state area so long as the service was performed *through* the common joinder points. In G & M Motor Transfer Co., Inc., Common Carrier Application, 43 M.C.C. 497 (1944), the Commission denied the petition, holding that the G & M certificate only authorized service which either began at Elkin or Statesville or ended at a point in North Carolina. The trucking industry jargon used to describe this construction of the authority granted is that it is a single grant of radial authority with a base area for outbound traffic smaller than the base area for inbound traffic. A cease and desist order was entered, and, subsequently, after repeated violations, G & M was enjoined by this court, in Interstate Commerce Commission v. G & M Motor Transfer Co., 64 F.Supp. 302 (W.D.N.C. 1945), from performing cross-haul service.

In 1947 Malone purchased G & M's transportation rights and succeeded to the authority in the G & M certificate. A certificate was issued to Malone in 1948 incorporating the Elkin-Statesville-eleven state area authority,[2] and on Jan-

---

2. Malone Certificate dated March 18, 1948:

 \* \* \* \* \*

IT IS FURTHER ORDERED, That the transportation service to be performed by the said carrier in interstate or foreign commerce shall be as specified below:

 \* \* \* \* \*

IRREGULAR ROUTES:

 \* \* \* \* \*

(E)

*General commodities*, except those of unusual value, and except dangerous explosives, commodities in bulk, and those requiring special equipment,

From Elkin and Statesville, N. C., to points and places in Delaware, Georgia, Maryland, New Jersey, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia, District of Columbia, those in Tennessee on, east, and south of a line beginning at the Georgia–Tennessee State line and extending along U. S. Highway 27 to junction U. S. Highway 70, thence along U. S. Highway 70 to Knoxville, thence along U. S. Highway 11W to the Tennessee–Virginia State line, and those in New York on and south of a line beginning at Oswego and extending along U. S. Highway 104 to Mexico, thence along New York Highway 69 to Rome, thence along New York Highway 49 to Utica, thence along New York Highway 5 to Schenectady, thence along New York Highway 7 to Troy, and thence along New York Highway 2 to the New York–Massachusetts State line.

 \* \* \* \* \*

In addition to the authority described in Sections (A), (B), (C), (D), and (E), the operations authorized in the respective sections having been purchased by the above-named carrier through proceedings in MC–F 2159, approved August 26, 1943; MC–F 2839, approved December 28, 1945; MC–F 2269, approved March 27, 1945; MC–F 2877, approved April 5, 1946; and MC–F 3550, approved December 19, 1947, the above-named carrier is authorized to perform through service in the transportation of authorized commodities under combinations of the authorities contained in each of the above-referred-to

uary 31, 1950, for reasons not material to this appeal, the certificate was reissued.[3] In the reissued certificate, the Commission's staff, by inadvertance, had removed lettered designations from above the separately stated grants of authority (the designation "E" had preceded the Elkin-Statesville eleven state area commodity grant in the 1948 certificate) and had added, after the recital of the authorities, a "tacking clause" in form as follows:

"Carrier may combine two or more of the above described irregular route authorities provided the authorities have a point common to both to which the carrier may transport a given commodity under one authority and from which it may transport the same com-

sections when, in effecting such combinations, the carrier is authorized under one of such sections to transport the shipment to a gateway point from which the shipment is authorized under the other of such sections, and provided in each instance that the movement is made through such authorized gateway point or points.

Any repetition in the statement of the authority granted herein shall be construed as conferring only a single operating right.

3. Malone Certificate dated January 31, 1950:

(the one now in effect and in issue)

\* \* \* \* \*

IT IS FURTHER ORDERED, That the transportation service to be performed by the said carrier in interstate or foreign commerce shall be as specified below:

\* \* \* \* \*

IRREGULAR ROUTES:

\* \* \* \* \*

*General commodities*, except those of unusual value, and except dangerous explosives, commodities in bulk, and those requiring special equipment.

From Elkin and Statesville, N. C., to points and places in Delaware, Georgia, Maryland, New Jersey, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia, District of Columbia, those in Tennessee on, east, and south of a line beginning at the Georgia–Tennessee State line and extending along U. S. Highway 27 to junction U. S. Highway 70, thence along U. S. Highway 70 to Knoxville, thence along U. S. Highway 11W to the Tennessee–Virginia State line, and those in New York on the

modity under the other, and establish through service under such combination provided in each instance the commodity is transported through the common or gateway point, and provided further that this certificate does not contain any restriction or other indication that through service shall not be conducted."

Perceiving its error, in March 1950, the Commission issued a corrected Malone certificate, which contained, immediately below the Elkin-Statesville eleven state area authority, an express restriction against tacking the two subparagraphs in this authority.[4] Immediately, Malone, by telegram, objected to the corrected certificate on the ground that it had been issued without notice

south of a line beginning at Oswego and extending along U. S. Highway 104 to Mexico, thence along New York Highway 69 to Rome, thence along New York Highway 49 to Utica, thence along New York Highway 5 to Schenectady, thence along New York Highway 7 to Troy, and thence along New York Highway 2 to the New York–Massachusetts State line.

From the above-described destination points to points and places in North Carolina.

\* \* \* \* \*

Carrier may combine two or more of the above-described irregular route authorities provided the authorities have a point common to both to which the carrier may transport a given commodity under one authority and from which it may transport the same commodity under the other, and establish through service under such combination provided in each instance the commodity is transported through the common or gateway point, and provided further that this certificate does not contain any restriction or other indication that through service shall not be conducted. Any repetition in the statement of the authority granted herein shall be construed as conferring only a single operating right.

4. Malone Corrected Certificate, issued in March, 1950:

IT IS FURTHER ORDERED, That the transportation service to be performed by the said carrier in interstate or foreign commerce shall be as specified below:

\* \* \* \* \*

and hearing.[5] The Commission, by telegram, responded that the corrected certificate in no way lessened the authority Malone had acquired from G & M.[6]

IRREGULAR ROUTES:

\* \* \* \* \*

*General commodities*, except those of unusual value, and except dangerous explosives, commodities in bulk, and those requiring special equipment,

From Elkin and Statesville, N. C., to points and places in Delaware, Georgia, Maryland, New Jersey, Ohio, Pennsylvania, South Carolina, Virginia, West Virginia, District of Columbia, those in Tennessee on, east, and south of a line beginning at the Georgia–Tennessee State line and extending along U. S. Highway 27 to junction U. S. Highway 70, thence along U. S. Highway 70 to Knoxville, thence along U. S. Highway 11W to the Tennessee–Virginia State line, and those in New York on and south of a line beginning at Oswego and extending along U. S. Highway 104 to Mexico, thence along New York Highway 69 to Rome, thence along New York Highway 49 to Utica, thence along New York Highway 5 to Schenectady, thence along New York Highway 7 to Troy, and thence along New York Highway 2 to the New York–Massachusetts State line.

From the above-described destination points to points and places in North Carolina.

5.

There matters stood until 1959, when, after a period of administrative jockeying, the Commission issued an order vacating the corrected March 1950 cer-

RESTRICTION: No combination of the two authorities specified immediately above for through service at a point common to both is authorized. Nor is the combination of said authorities with the authority to transport empty containers specified immediately below for through service at a point common to both authorized. This restriction does not forbid the combination of either of said authorities with others held by this carrier for the purpose of rendering through service.

\* \* \* \* \*

Carrier may combine two or more of the above-described irregular route authorities provided the authorities have a point common to both to which the carrier may transport a given commodity under one authority and from which it may transport the same commodity under the other, and establish through service under such combination provided in each instance the commodity is transported through the common or gateway point, and provided further that this certificate does not contain any restriction or other indication that through service shall not be conducted.

WESTERN
UNION

MARCH 31, 1950

INTERSTATE COMMERCE COMMISSION

REGARDING QUOTE CORRECTED CERTIFICATE ET CETERA UNQUOTED DATED JANUARY 31, 1950, BUT JUST RELEASED MC–75840 TO MALONE FREIGHT LINES INC. AND PARTICULARLY RESTRICTIONS IMPOSED SHEET SIX NOT FOUND IN CERTIFICATE DATE SAME DATE OR MARCH 18, 1948, PLEASE BE ADVISED CARRIER CONSIDERS SUCH RESTRICTIONS UNJUSTIFIED AND IN VIOLATION OF ACT INASMUCH AS NO REQUEST FOR AMENDMENT WAS MADE BY CARRIER AND NO NOTICE OR HEARING AS CONTEMPLATED BY SECTION 212 HAS BEEN HAD STOP YOUR PROMPT ADVICE BY TELEGRAM COLLECT WILL BE APPRECIATED STOP IN VIEW OF FACT THAT ALLEGED CORRECTED CERTIFICATE DOES NOT CONTAIN PROVISION CANCELLING AND SUPERCEDING PRIOR CERTIFICATES WE ASSUME CARRIER MAY CONTINUE OPERATIONS AS THERETOFORE LAWFULLY AUTHORIZED.

JAMES W WRAPE ATTORNEY FOR MALONE FREIGHT LINES INC.

———◆———

6. See Note 6 on Page 219.

tificate. This order revived the uncorrected Malone certificate of January 31, 1950, the certificate at issue on this appeal. Then, as is stipulated, between January 8, 1962, and December 12, 1962, Malone made twelve cross-haul shipments *between* points and places in the eleven state area through the joinder points of Elkin and Statesville. It is also stipulated by Malone that at the time of acquiring the Elkin-Statesville eleven state area authority, it was aware of the Commission's interpretation of this authority in G & M Motor Transfer Co., Inc., Common Carrier Application, supra, and of this court's injunction in Interstate Commerce Commission v. G & M Motor Transfer Co., supra.

The Commission investigation of Malone was instituted in 1963 under the provisions of 49 U.S.C.A. § 304(c) and 49 U.S.C.A. § 312(a), to determine if the cross-haul shipments were done in violation of 49 U.S.C.A. § 306(a), that is, without transportation authority conferred by the certificate then, and now, in effect, *i. e.*, the uncorrected January 31, 1950 certificate. The plaintiffs were permitted to intervene in the investigation as interested parties, and pursuant to Commission order, the Commission's Bureau of Inquiry and Compliance also participated.

In the construction of transportation certificates the Commission's policy is not to consider matters extraneous to the face of the certificate, *i. e.*, events antecedent or subsequent to its issuance, to determine the scope of authority granted unless the terms of the certificate themselves are "patently ambiguous." Morehouse—Investigation of Operations and Practices, 81 M.C.C. 614 (1959). The rationale is that it is important that certificates actually confer the transportation rights they purport to confer so as not to place upon carriers and the shipping public the burden of investigating the administrative history of certificates to determine the scope of authority granted. Certainly it is preferable that ordinarily certificates "speak for themselves." A second Commission policy, of relevance here, is that two or more *separate*, unrestricted authorities may be "tacked" by the carrier to permit cross-haul service through common gateway points whether so

6.

WESTERN
UNION

APRIL 4, 1950

JAMES W. WRAPE,
ATTORNEY AT LAW
STERICK BUILDING
MEMPHIS, TENN.

RETEL RESTRICTION IMPOSED IN CORRECTED CERTIFICATE MC 75840 DATED JANUARY 31, 1950 ISSUED MALONE FREIGHT LINES DID NOT LESSEN PREVIOUS AUTHORITY GRANTED IN MARCH 18, 1948 CERTIFICATE STOP MARCH CERTIFICATE AUTHORIZED COMBINATIONS OF RIGHTS BY LETTERED PARAGRAPHS ONLY THEREFORE NO COMBINATION OF RIGHTS UNDER SECTION E AUTHORIZED THEREIN STOP IN CHANGING WORDING OF GATEWAY AUTHORIZATION CERTIFICATE ISSUED JANUARY 1950 COGNIZANCE OF FACT PORTION PREVIOUSLY DESCRIBED UNDER SECTION E CONSTITUTED ONE RADIAL IRREGULAR ROUTE AUTHORITY WAS INADVERTENTLY OVERLOOKED SO CORRECTED CERTIFICATE WITH APPROPRIATE RESTRICTION WAS RELEASED. OPERATIONS MAY LAWFULLY BE CONDUCTED ONLY UNDER CORRECTED CERTIFICATE REFER O.

W. Y. BLANNING, DIRECTOR

CC: DISTRICT DIRECTOR ABRAMS

COLLECT

stated in the certificate or not. Transport Corp. of Virginia Extension—Maryland, 43 M.C.C. 716 (1944).

The trial examiner, after a full hearing, concluded that the terms of the Elkin-Statesville eleven state area authority were patently ambiguous. However, without "going behind the certificate" i. e., examining its administrative history, the examiner determined that it conferred only a single operating right, the separately stated paragraphs of which could not be tacked, and therefore Malone had exceeded its authority in performing cross-haul service. After further finding that Malone had performed the shipments under a "reasonable claim of right," the examiner concluded that the appropriate remedy was a cease and desist order, rather than suspension of the Malone certificate as the plaintiffs had asked.

In Malone Freight Lines, Inc., Investigation of Operations and Practices, 102 M.C.C. 163 (1966), Division One of the Commission (Vice Chairman Tucker dissenting) concluded, in reversing the trial examiner, that the shipments under investigation had been performed within the authority conferred on Malone. This conclusion was reached by finding that the terms of the Elkin-Statesville eleven state area authority were not patently ambiguous and that this finding *prohibited* going behind the certificate. The terms of the certificate were then construed as follows: " * * * the authorities in question are set forth in two separate paragraphs, namely (a) and (b),[7] and they have common points of service, Elkin and Statesville. The rule is that a motor common carrier can tack two separate unrestricted authorities,

such as we have here, where (1) there is a point of service common to both operating authorities and (2) the physical operation is actually conducted through such common points." [8]

■ In setting aside the Commission's order, we first conclude that the terms of the certificate are patently ambiguous. In so doing, we do not substitute our judgment for that of the Commission, Converse v. United States, 109 F.Supp. 807 (D.C.Cal. 1953), but hold that the Commission's judgment is without rational basis, 5 U.S.C.A. § 706 (2) (A). The sole reason advanced by the Commission for finding that *two* operating rights (or authorities) were conferred in the Elkin-Statesville eleven state area portion of the certificate is that the grant of authority is structured in two sub-paragraphs. We are willing to concede, *arguendo*, that this is *one* reasonable construction of the terms of the certificate—that separate operating rights were granted. *See* Houff Transfer, Inc., Purchase (Portion)—Boward Truck Line, Inc., 101 M.C.C. 727 (1967). And if our inquiry were to stop at this point, we would have no choice but to affirm the Commission's order. United States v. Shimer, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961); Arrowhead Freight Lines v. United States, 114 F.Supp. 804 (D.C.Cal. 1953). However, we think there is another equally reasonable, if not more reasonable, interpretation of the certificate.

The certificate in question grants authority to carry general commodities. The geographical scope of this authority is then described in two sub-paragraphs, each indented two spaces from, and situated below, the granting clause.

---

7. This certificate (abbreviated in footnote 3) contains no "(a) and (b)" designation of paragraphs, and the history of the certificate shows (see footnote 2) that the two paragraph authority was once designated as one section "E" but never designated in two separate parts as "(a) and (b)" would indicate. See Malone Freight Lines, Inc., Investigation of Operations and Practices, 102 M.C.C. at 172.

8. We notice that this construction is exactly opposite to that given to identical language in the G & M predecessor certificate in G & M Motor Transfer Co., Inc., Common Carrier Application, supra, which construction was enforced by this court in Interstate Commerce Commission v. G & M Motor Transfer Co., supra. There the Commission held that "to" and "from" did not mean "through".

The first sub-paragraph permits service from Elkin and Statesville, North Carolina, *to* points and places in the eleven state area. The second sub-paragraph permits service *from* "the above described points and places to points and places in North Carolina." The construction-question is whether the two sub-paragraphs constitute separate operating rights, or merely modify a single right—the authority to transport general commodities. We think it is reasonable, infra, to adopt the latter interpretation. Hence, if we concede, as we do, that the Commission's interpretation is a reasonable one, and we conclude, as we do, that interpretation as a single right is also a reasonable one,[9] then by any plain use of the English language the certificate is "patently ambiguous." We emphasize that we are not displacing the Commission's choice of one of two reasonable interpretations of the certificate with our own preference. It is, rather, the existence of two conflicting, but equally plausible constructions, which, we think, creates sufficient ambiguity in the terms of the certificate for us to characterize the Commission's finding that the certificate was not patently ambiguous as clearly erroneous. Hence we hold that the Commission's finding that there was no patent ambiguity was arbitrary, capricious and constituted an abuse of agency discretion. Grace Line, Inc. v. Federal Maritime Bd., 263 F.2d 709 (2d Cir. 1959); Smith & Solomon Trucking Co. v. United States, 255 F.Supp. 243 (D.C.N.J. 1966).

We do not, of course, know why the typist of the certificate structured the Elkin-Statesville eleven state area authority in two paragraphs. One reasonable explanation, consistent with the granting of a single right, is that different subjects are described in each—Elkin and Statesville are smaller than, and hence grammatically distinct from, all of North Carolina. For this reason, we think it is reasonable to interpret the certificate as granting but a single right.

Were it the case that the Commission uniformly adhered to a rule of construction that sub-paragraphs, by definition, constituted separate operating rights, this conclusion would not be open to us, nor, with deference to the integrity of a regulatory scheme, should we disturb the Commission's finding. Maddock & Miller, Inc. v. United States Lines, 365 F.2d 98 (2d Cir. 1966). However, this is not the case. Less than four months prior to its decision in this case, the Commission, in AAA Trucking Corp., Inc., et al. v. Burgmeyer Bros. Inc., et al., 100 M.C.C. 470 (1966), noted the impracticability of a uniform rule:

> "Resolution of the issue of joinder or tacking of two sets of irregular-route authorities granted to a carrier in a single proceeding depends upon whether the operating rights comprise a single or separate multiple grant of authority. If they comprise but a single grant, whether set forth in one or more paragraphs, there is no right to effect their combination. However, multiple separate grants of authority with a common point of service may be combined at the common point provided, of course, that neither grant is restricted against joinder with the other. *Establishment of a definite rule by which two parts of a single grant may readily be recognized is not possible. On the other hand it is apparent the underlying reason for*

---

9. We notice that five disinterested parties have interpreted the language appearing in this certificate as conferring only a single operating right. This conclusion was reached by the Commission in G & M Transfer Co., Common Carrier Application, supra, by this court in Interstate Commerce Commission v. G & M Transfer Co., supra, and by the Com-

mission's bureau of Inquiry and Enforcement, Hearing Examiner Heinemann and Vice Chairman Tucker in Malone Freight Lines, Inc., Investigation of Operations and Practices, supra. Thus we have pardonable confidence in our conclusion that this interpretation is not unreasonable.

*describing a single grant in separate parts arises most often in those instances where the base area for outbound radial authority is smaller than, and usually included within, a larger base area for the corresponding inbound authority, necessitating, of course, a separate description of each.* Where this occurs, the result is a pattern of radial territorial authority which would ordinarily be authorized as a 'between' rather than a 'from and to' operation *except for the variation in the territorial scope of the radial base." Id.* at 475. (Emphasis added).

See Daily Express, Inc.—Control and Purchase—Jackson Trucking Company, 101 M.C.C. 355 (1966); Rushing Common Carrier Application, 84 M.C.C. 430 (1961).

In setting aside the Commission's order, we notice that the Commission's decision not to "go behind the certificate" was critical to the resolution of this case. Any examination of antecedent matters, for example, G & M Motor Transfer Co., Inc., Common Carrier Application, supra, would have disclosed that cross-hauling rights were not intended in the grant of authority to Malone. The Commission did not, of course, examine antecedent matters because it found no patent ambiguity in the certificate.

To set aside the Commission's order we do not have to go any further than our conclusion that the Commission's finding was without rational foundation. 5 U.S.C.A. § 706(2) (A). However, on another and independent ground, we feel that the order should be set aside. ▮ We think the Commission's actions in regard to this case have been procedurally deficient. The right to use the public highways as a common motor carrier is conditioned on conformity with a statutory scheme intended to protect the public and competitors of the user. 49 U.S.C.A. § 306(a) (1) makes it illegal to engage in interstate carriage unless there is in effect a certificate issued by the Commission authorizing the carrier's operations. 49 U.S.C.A. § 307(a) provides that a certificate shall issue "if it is found that the applicant is fit, willing and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied." Entitlement to the certificate requires a showing by the carrier that the transportation "will secure the benefits of an improved service without being unduly prejudicial to the existing service." Hudson Transit Lines v. United States, 82 F.Supp. 153, 157 (S.D.N.Y. 1948), *aff'd* 338 U.S. 802, 70 S.Ct. 59, 94 L.Ed. 485 (1949). Proceedings under 49 U.S.C.A. § 306(a) (1) and 49 U.S.C.A. § 307(a) are subject to the strictures of the Administrative Procedure Act, including notice to interested parties, 5 U.S.C.A. § 554(b), a hearing, 5 U.S.C.A. § 554(c), and an adjudication on the record, 5 U.S.C.A. § 557(c). See Riss & Co. v. United States, 341 U.S. 907, 71 S.Ct. 620, 95 L.Ed. 1345 (1951), *reversing per curiam,* 96 F.Supp. 452 (W.D.Mo. 1950); Chicago & E. I. R. Co. v. United States, 107 F.Supp. 118 (D.C. Ind. 1952), *aff'd* 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (1953); Capital Transit Co. v. United States, 97 F.Supp. 614 (D.C.D.C. 1951); Pinkett v. United States, 105 F.Supp. 67 (D.C.Md. 1952).

The Commission's construction of the certificate, together with the inadvertent issuance of the January 31, 1950 certificate, and the vacating of the March, 1950 certificate, have had the effect, albeit indirectly, of conferring on Malone transportation authority it did not acquire from G & M, and indeed, was foreclosed from exercising in G & M Motor Transfer Co., Inc., Common Carrier Application, supra, and the subsequent injunction proceeding. With the Commission's blessing, Malone is now free to perform cross-hauling service within

the eleven state area. Yet neither the substantive nor procedural requirements of the relevant statutes have been conformed to. There has never been a finding, as required by 49 U.S.C.A. § 307(a), that the service Malone is now free to perform is in the public interest, nor has there been an adjudication of record of such a finding, nor notice to interested parties, nor a hearing. We think the Commission has acted in disregard of its statutory mandate in discontinuing its investigation with the result that Malone is permitted to cross-haul. We cannot agree that its inaction should be sustained as a reasonable exercise of agency discretion.

In the proceeding appealed from the Commission stated at 102 M.C.C. 168: "No determination is made as to whether respondent's certificate in force can be modified on the basis it was issued inadvertently or otherwise. Any action of that nature would require proper opportunity for notice and hearing. American Trucking Assns. v. Frisco [Transp.] Co., 358 U.S. 133 [79 S.Ct. 170, 3 L.Ed. 2d 172]. Accordingly, the investigation will be discontinued." In oral argument before this court, counsel for the Commission vigorously contended that any issue relating to modification of the Malone certificate on the basis that authority had been illegally conferred was not properly before the court. In substance, this argument is based on two theories: (1) that as the party to be adversely affected, Malone is entitled to, and did not get, notice[10] that the legality of its authority to cross-haul was questioned and its certificate subject to modification by interpretation or otherwise, and (2) that if the plaintiffs wish to raise this issue, it is incumbent on them to file a private complaint and allege as a fact illegal enhancement of the Malone authority.

 The Commission, on its own motion, instituted the investigation of Malone under 49 U.S.C.A. § 304(c) and 49 U.S.C.A. § 312(a). Section 304(c) authorizes the Commission, on private complaint or on its own motion, to investigate non-compliance with Chapter 8 of the Interstate Commerce Act, including 49 U.S.C.A. § 306(a) (1). Section 312(a) authorizes the Commission, on private complaint or on its own motion, after notice and hearing, to suspend, modify or revoke the certificate of a carrier for wilful failure to comply with an order of the Commission. The normal procedure is that a cease and desist order issues under section 304(c), and, if the order is violated, the carrier's certificate is suspended, modified or revoked under section 312(a). However, it is clear that the Commission has the power—and the duty—to modify certificates issued improperly through inadvertence. American Trucking Ass'n v. Frisco Transp. Co., 358 U.S. 133, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958). 49 U.S.C.A. § 17(3). Similarly, while the Commission cannot modify properly issued certificates under the guise of interpretation, Mitchell Bros. Truck Lines v. United States, 225 F.Supp. 755 (D.C.Or.1963), affm'd, 378 U.S. 125, 84 S.Ct. 1647, 12 L.Ed.2d 744 (1965), the Commission can, by interpretation, declare the authority inhering in a certificate at the time of its issuance. Zuzich Truck Line, Inc., v. United States, 224 F.Supp. 457 (D.C.1963); Simpson v. United States, 200 F.Supp. 372 (D.C. Iowa 1961).

 The Commission's order of July 26, 1963, No. MC–C–4172, states that an investigation of Malone is instituted under sections 304(c) and 312(a) to determine if Malone is operating in violation of section 306(a).[11] Malone concedes in its brief that it received notice of an investigation to determine "whether Malone is violating the terms of its certificate," and Malone stipulated that it knew of the prior G & M pro-

10. "Persons entitled to notice of an agency hearing shall be timely informed of— * * * the matters of fact and law asserted." 5 U.S.C.A. § 554(b) (3).

11. See Note 11 on Page 224.

ceeding interpreting its predecessor's certificate as not authorizing cross-hauling. In view of the foregoing, and mindful that Malone has proceeded at every step on the advice of counsel, it is difficult to understand how, in good faith, the Commission can come before us and argue that Malone did not have notice that the proper scope of the investigation of its certificate might extend to extraneous matters including inadvertent issuance of a prior certificate. The Commission states in its brief that prior to the proceeding appealed from the is-

II.

## ORDER

### INTERSTATE COMMERCE COMMISSION

NO. MC–C–4172 SERVICE DATE
AUGUST 2, 1963

### MALONE FREIGHT LINES, INC., INVESTIGATION OF OPERATIONS AND PRACTICES

PRESENT: Abe McGregor Goff, Vice Chairman, to whom the matter, which is the subject of this order, has been assigned for action thereon.

*It appearing*, That on January 31, 1950, in No. MC–75840 and thereafter in Sub Nos. 88, 94, 109 thereunder, certificates were issued by the Commission under Part II of the Interstate Commerce Act to Malone Freight Lines, Inc., of Birmingham, Alabama, authorizing operations in interstate or foreign commerce as a common carrier of property by motor vehicle over both regular and irregular routes, between points in Alabama, Tennessee, Georgia, North Carolina, and other states;

*It further appearing*, That there is reason to believe that Malone Freight Lines, Inc., has been and is performing operations not authorized by its said certificates, in violation of Section 206(a) of said Act; and good cause appearing therefor:

*It further appearing*, That there is reason to believe that Malone Freight Sections 204(c) and 212(a) of said Act into and concerning the practices of Malone Freight Lines, Inc., with a view to determining whether it has been and is engaging in the transportation of property in interstate or foreign commerce for compensation as a common carrier by motor vehicle in violation of Section 206(a) of said Act, and to issuing such orders and taking such other and further action as the facts and circumstances may appear to warrant;

*It is further ordered*, That Malone Freight Lines, Inc., 200 South 35th Street, Birmingham, Alabama, be, and it is hereby made the respondent in this proceeding, and that this matter be assigned for hearing at a time and place hereafter to be fixed.

*It is further ordered*, That in the event it is found that said Malone Freight Lines, Inc., has wilfully violated, and is wilfully violating said provisions of the Act, an order may be entered suspending forthwith, in whole or in part, the certificates issued Malone Freight Lines, Inc., and, if it is found that Malone Freight Lines, Inc., whether wilfully or otherwise, has violated, or is violating said provisions, an order may be entered requiring Malone Freight Lines, Inc., to comply therewith and thereafter to maintain such compliance, and upon the wilful failure of Malone Freight Lines, Inc., to comply with such order, the certificates of said respondent may be suspended or revoked, in whole or in part;

*It is further ordered*, That the Bureau of Inquiry and Compliance be directed to participate as a party in this proceeding;

*And it is further ordered*, That a copy of this order be served upon said respondent and that a copy be filed in Docket No. MC–75840.

Dated at Washington, D.C., this 26th day of July, 1963.

By the Commission, Vice Chairman Goff.

HAROLD D. McCOY
Secretary

(SEAL)

sues were "narrowed" in private correspondence between itself and Malone; however, neither Malone nor the Commission has favored this court with evidence of such correspondence. We think that Malone has had adequate notice of all issues raised on this appeal and so hold.[12] Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524 (1930); City of Dallas v. C. A. B., 94 U.S.App.D.C. 175, 221 F.2d 501 (1954), cert. denied 348 U.S. 914, 75 S.Ct. 295, 99 L.Ed. 717 (1955); American Newspaper Pub. Ass'n v. N.L.R.B., 193 F.2d 782 (7th Cir. 1951) cert. denied 344 U.S. 812, 73 S.Ct. 10, 97 L.Ed. 632 (1952).

 Similarly, we reject the Commission's argument that this appeal (and antecedent proceedings before the Commission) is not the procedurally correct vehicle to question whether the Commission has illegally enlarged the scope of Malone's authority. The Com-

mission maintains that the plaintiffs must take the further step of filing a private complaint under sections 304(c) and 312(a)—the identical statutes under which the Commission instituted this proceeding. Thus, in effect, the Commission is saying to the plaintiffs that even though the proceeding appealed from was instituted under sections 304(c) and 312(a), the plaintiffs must turn around and file a complaint under *exactly the same statutes* and allege illegality which arises out of *exactly the same facts* as were before the Commission in the proceedings here appealed from. Such a position is administratively intolerable. Some flexibility in administrative proceedings is necessary to prevent incredible waste of energy, time and money. As Professor Davis aptly states, "[t]he most important characteristic of pleadings in the administrative process is their unimportance." [13] Drained of its procedural

---

12. The position of the Commission in regard to adequacy of notice seems to embody a concept of particularity in pleading equivalent to the rigid formalisms of common law pleading. It is not disputed that Malone had notice of the conduct complained of—that the performance of cross-haul operations in 1962 violated the scope of authority conferred on Malone by its certificate then in effect. Nor is it disputed that the investigation proceeding was instituted under statutes which variously gave the Commission the power to order Malone to cease and desist in the conduct complained of, or to order modification, suspension or revocation of Malone's certificate. See footnote 11. Thus, were this a federal *civil* proceeding, it is clear that the Commission's pleadings are sufficiently particularized to withstand a motion to dismiss. Fed.R.Civ.P. 8(a) (2). See Dioguardi v. Durning, 139 F.2d 774 (2d Cir. 1944). And it is clear that the strictures of the Administrative Procedure Act require as as maximum no more. A theory of pleading "based on common law thinking has no place in administrative proceedings." Sisia v. Flemming, 183 F.Supp. 194, 201 (E.D.N.Y.1960). "The (National Labor Relations) Act does not require the particularity of pleading of an indictment or information, nor the elements of a cause like a declaration at law or a bill in equi-

ty." American Newspaper Publishers Ass'n v. N. L. R. B., 193 F.2d 782, 800 (7th Cir. 1951). See 1 Davis, Administrative Law §§ 8.04, 8.05 (1958).

Moreover, a historic distinction exists between the degree of particularity required in judicial and agency pleading. Davis states that the evolution away from code pleading, in administrative law antedated the same phenomenon in civil law. Davis, supra, § 8.04 at 523. As early as 1909 a court in reviewing an ICC order declared: "If this order were a judgment of a court, we should without hesitation say that the facts alleged in the petition did not support it. The Interstate Commerce Commission is, however, an administrative tribunal dealing with practical problems. So long as parties affected by its orders appear and are fully heard, we think it would be most unfortunate to deny its power to grant such relief as the facts shown upon the investigation should call for, even though such facts might be outside the issues raised. * * * The strict rules of pleading should not be held applicable to it." New York C. & H. R.R. v. I. C. C., 168 F. 131, 138–139 (C.C.S.D.N.Y.1909). *Cf.* Northwestern Bell Tel. Co. v. Nebraska State Ry. Comm., 297 U.S. 471, 56 S.Ct. 536, 80 L.Ed. 810 (1936).

13. See footnote 12 and materials there cited.

verbiage, the Commission's argument is that it is the plaintiff's burden, rather than the Commission's to enforce the transportation laws. We take a higher view of statutory duty and agency function. 49 U.S.C.A. § 304(a) (6). *Cf.* Panhandle Eastern Pipe Line Co. v. Federal Power Comm., 386 F.2d 607 (3d Cir. 1967).

The order of the Commission dated May 4, 1966, is annulled and set aside and the cause is remanded for further proceedings. 5 U.S.C.A. § 706(2) (A), (D), 28 U.S.C.A. § 1336, 28 U.S.C.A. § 2325. In the exercise of our discretion to compel agency action unreasonably withheld, 5 U.S.C.A. § 706(1), we instruct the Commission on remand to (1) examine the administrative history of the Malone certificate and determine the scope of authority actually conferred by the certificate, and (2) to consider and decide whether the inadvertent issuance of the January 31, 1950 certificate illegally enlarged the scope of Malone's transportation authority.

Reversed.