## NORTHWESTERN BELL TELEPHONE CO. *v.* NEBRASKA STATE RAILWAY COMMISSION.

No. 350. Argued February 6, 1936.—Decided March 2, 1936.

*Mr. Charles M. Bracelen,* with whom *Messrs. Frank E. Randall* and *Tracy J. Peycke* were on the brief, for appellant.

*Mr. Edwin Vail,* Assistant Attorney General of Nebraska, and *Mr. John E. Benton,* with whom *Mr. Wm. H. Wright,* Attorney General, was on the brief, for appellee.

By leave of Court, *Messrs. Clyde S. Bailey, John E. Benton,* and *Edwin Vail* filed a brief on behalf of the National Association of Railroad and Utilities Commissioners, as *amicus curiae,* urging affirmance of the judgment of the court below.

MR. JUSTICE STONE delivered the opinion of the Court.

This case comes here on appeal under § 237 of the Judicial Code from a judgment of the Supreme Court of Nebraska, 128 Neb. 447; 259 N. W. 362, affirming an order of the Nebraska State Railway Commission which directs

appellant Telephone Company to use, for purposes of accounting and reporting to the Commision, for the year 1934, a composite depreciation rate of 3½% upon all its depreciable property in Nebraska.

Appellant now assails the order on three grounds: (1) that it was made without such notice and hearing as due process requires; (2) that it is invalid because the Interstate Commerce Commission, pursuant to Congressional legislation, has occupied the field of regulation of telephone company accounting, and has made valid orders conflicting with that of the State Commission; and (3) that it infringes due process because it is unsupported by evidence and deprives appellant of the right to keep accurate books of account.

The record does not disclose what, if any, federal questions were presented to the state supreme court. Its opinion discusses only the first two contentions made here, and we accordingly confine our review to them. See *Miedreich* v. *Lauenstein,* 232 U. S. 236; *Cissna* v. *Tennessee,* 246 U. S. 289; *Saltonstall* v. *Saltonstall,* 276 U. S. 260.

■ Assuming, without deciding, that due process requires that the Commission's order be upon notice to appellant and opportunity to be heard, we think that requirement was satisfied by the procedure followed by the Commission. The challenged order was made at the conclusion of proceedings initiated by the State Commission by its General Order No. 59, directing Class A telephone companies, to which class appellant belongs, to file with the Commission specified schedules of depreciation rates. The order was prefaced by an opinion of the Commission.

The opinion, after reciting the authority conferred upon the Interstate Commerce Commission by § 20 of the Interstate Commerce Act, as amended by the Transportation Act of 1920, 41 Stat. 493, to fix and prescribe depreciation charges for telephone companies, refers to

the order of that Commission of July 28, 1931, In Depreciation Charges of Telephone Companies, Docket No. 14,700, 177 I. C. C. 351, which, for the assistance of the Commission in prescribing depreciation charges, required Class A telephone companies to file with their respective state commissions by September 1, 1932, their estimates of composite annual percentage depreciation rates applicable to each class of depreciable property owned or used by them, with supporting data. The order provided for the adoption of a depreciation rate by the Commission, to be effective January 1, 1933. The opinion of the State Commission points out that by later order of the Interstate Commerce Commission the filing date was postponed to August 1, 1934, and the date for the prescribed rate to January 1, 1935.

The opinion also refers to the Depreciation Section Service Circular 7, issued by the Interstate Commerce Commission Bureau of Accounts, which requested that schedules of depreciation rates and statements of estimated service lives and salvage values of telephone property be submitted not later than March 1, 1934, "in order that the Commission may be informed as to the rates contemplated for use" by the telephone companies for the year 1934. The opinion states that it is the view of the State Commission that it has not been deprived of jurisdiction to fix rates for intrastate telephone service, and that, while Congress has given the Interstate Commerce Commission authority to prescribe a uniform system of accounting and rates of depreciation for purposes of accounting to it, the state commissions are not deprived of their authority to fix rates of depreciation so far as their own accounting and reporting system is concerned.

The Commission accordingly ordered that Class A telephone companies file with it, not later than March 1, 1934, a schedule of depreciation rates by primary accounts which they proposed to apply for the calendar year 1934,

with such supporting data as is required by the Interstate Commerce Commission, and to file not later than August 1, 1934, their composite annual percentage depreciation rates to be effective January 1, 1935, in accordance with the order of the Interstate Commerce Commission in Docket No. 14,700, and its supplemental orders. The order of the State Commission concludes with the statement that it approves the procedure adopted by the Interstate Commerce Commission for prescribing depreciation rates, except that "It reserves the right to review the findings and conclusions of the Interstate Commerce Commission and enter a final order thereon as to the depreciation rate for accounting purposes to this commission."

In compliance with this order appellant, on March 1, 1934, filed schedules classifying its depreciable property in twelve accounts, with estimated rates of depreciation of each class for 1934, and showing a composite estimated rate of depreciation on all accounts of 4.48%.

Upon examination of these schedules the Commission made, a further order, on March 6, 1934, reciting that depreciation rates for 1934 had been filed and that it was not "fully satisfied with the rates proposed," and directing that the case be set "for hearing for oral examination of the members of respondent's staff, who had prepared said schedules, and for the introduction of such evidence as the Commission may desire to submit with opportunity of objections and cross-examination by respondent."

Appellant argues that throughout these proceedings it was not advised that the Commission proposed to make any order with respect to depreciation rates for 1934, or to do more than make recommendations as to the proper depreciation rates to be adopted by the Interstate Commerce Commission for 1935. But it was evident from the opinion and orders of the Commission mentioned that it proposed to deal with two aspects of appellant's depre-

ciation accounting. One was the gathering of data with respect to the proposed rates of depreciation for 1935, which the order of the Interstate Commerce Commission had directed should be filed with the state commissions, and as to which the latter had been requested to submit their recommendations. The other related to the State Commission's asserted authority to fix depreciation rates, its rejection of the proposed rates for 1934 as unsatisfactory, and its direction that hearings be had on them. That the primary purpose of the hearing was to aid the Commission in its rate-making rather than its advisory function seems apparent, the more so as the order for the hearing refers only to the 1934 rates and as the date set for it was in March, four months before August 1, 1934, the date fixed for filing data for the 1935 rate, with respect to which alone the Commission had been asked to exercise its advisory function. Because of subsequent postponements the date for submitting the data for 1935 never arrived.

Possibility of doubt as to the purpose of the hearing was removed in its course before the Commission. At the outset the presiding commissioner announced that the purpose was to fix the 1934 rate, a statement which he repeated later in the course of the hearing on the same day. To this appellant made no objection. The hearing occupied two days. Appellant was represented by counsel. It produced witnesses, including its own engineer and others who had prepared the filed depreciation schedules for 1934, who were examined and cross-examined at length. No evidence tendered by it was rejected. So much of the testimony as is included in the bill of exceptions occupies 151 pages of the printed record. It discloses that both the Commission and the appellant were seeking to establish the proper rate of depreciation to be applied to appellant's property for 1934. The state court rightly concluded that appellant was afforded

a full hearing upon adequate notice that the Commission proposed to fix a depreciation rate for 1934, and that the requirements of due process were satisfied.

■ The remaining question is whether the jurisdiction conferred by Congress upon the Interstate Commerce Commission over accounts and depreciation rates of telephone companies, and the exercise of that jurisdiction by the Commission, have operated to curtail state authority over depreciation rates for 1934.

The Interstate Commerce Commission was given no jurisdiction over telephone service rates, but §§ 1 (1), 20 (1) (5) of the Interstate Commerce Act, as amended by Act of June 29, 1906, 34 Stat. 595, see 36 Stat. 555, 556, conferred on the Commission authority, in its discretion, to prescribe a uniform system of accounts for telephone companies, and made it unlawful for them to keep any accounts other than those prescribed or approved by the Commission. Such a system of accounts was required by the Commission February 1, 1913. Effective January 1, 1933, it prescribed a Revised System of Accounts for Class A and Class B Telephone Companies and directed that they keep all accounts in conformity to it.

The Commission never undertook to prescribe rates of depreciation for telephone companies under the Act of 1906. But the Transportation Act of February 28, 1920, again amending § 20 (5) of the Interstate Commerce Act, directed the Commission, "as soon as practicable," to prescribe the classes of property of carriers, including telephone companies, "for which depreciation charges may properly be included under operating expenses and the percentages of depreciation which shall be charged with respect to each of such classes of property." Carriers were forbidden to charge depreciation rates other than those prescribed by the Commission. Since 1920 the Interstate Commerce Commission has taken steps

preparatory to the establishment of rates of depreciation for telephone companies, some of which we have mentioned. The adoption of rates has been postponed from time to time and has now been indefinitely postponed by Order of the Communications Commission of May 1, 1935, to which the authority of the Interstate Commerce Commission over telephone companies was transferred by Act of Congress of June 19, 1934, 48 Stat. 1064.

We leave aside the argument of respondent that the federal government is powerless to deny to the states authority to prescribe accounts and depreciation rates to assist them in fixing rates for intrastate telephone service, see *Interstate Commerce Comm'n* v. *Goodrich Transit Co.,* 224 U. S. 194; compare *Pollock* v. *Farmers Loan & Trust Co.,* 157 U. S. 429, 586; *Collector* v. *Day,* 11 Wall. 113, 124; *Ambrosini* v. *United States,* 187 U. S. 1, 7, and pass to the question, decisive of the present case, whether there has yet been any exercise of such power. Both the language of the statute already quoted, and the nature of its subject matter indicate that it contemplated no restriction of state control over depreciation rates until the Interstate Commerce Commission had prescribed its own rates. State commissions were not deprived of power to fix rates for intrastate telephone service, in determining which rates of depreciation chargeable to operating expenses play an important part. See *Lindheimer* v. *Illinois Bell Telephone Co.,* 292 U. S. 151. The statute did not envisage an immediate adoption of depreciation rates by the Interstate Commerce Commission. A long period might elapse, as the event has shown, before the Commission would be prepared to act. It cannot be supposed that Congress intended by the amendment to § 20 (5) to preclude all regulation, state and national, of depreciation rates for telephone companies, for an indefinite time, until the Interstate Commerce Commission

could act administratively to prescribe rates. See *Illinois Central R. Co.* v. *Public Utilities Comm'n,* 245 U. S. 493, 510; *Railroad Commissioners* v. *Great Northern Ry. Co.,* 281 U. S. 412, 430. In *Smith* v. *Illinois Bell Telephone Co.,* 282 U. S. 133, 139, this Court pointed out that until the Interstate Commerce Commission has prescribed depreciation rates the prerogative of the state to regulate such rates cannot be gainsaid. See also *Missouri Pacific Ry. Co.* v. *Larabee Flour Mills Co.,* 211 U. S. 612, 623.

When respondent fixed the composite rate of depreciation applicable to all classes of appellant's property for 1934, the Interstate Commerce Commission had prescribed no rate. It had given directions for filing data with state commissions preparatory to establishing a rate for the year 1935, and by the Revised Uniform System of Accounts for Telephone Companies, effective in 1933, it had prescribed, Instruction 81 (A) (C), the method by which depreciation accounts should be kept, directing that there be a composite annual percentage rate of depreciation for each account covering depreciable property, and that until rates "prescribed by this Commission become effective" the company's estimated composite rate be used.

It is said that the company rate, use of which was thus authorized for accounting purposes, must be taken as the prescribed rate until the Commission has fixed its own rate, and that in consequence state commissions are powerless to disturb it. But the order shows on its face that the Commission did not regard the company rates as rates prescribed by the Commission as required by § 20 (5) and we think the purpose of the order, made plain by its language, was to establish a method of accounting, not to prescribe depreciation rates within the meaning of § 20 (5). It thus, without purporting to restrict the power of state commissions over depreciation rates, left the telephone companies free, so far as the Interstate

Commerce Commission was concerned, to use their own depreciation rates for purposes of the required accounting, until the Commission performed the duty to establish rates, imposed upon it by Congress.

In any event, we think that § 20 (5) cannot be read as authorizing the Interstate Commerce Commission to supplant state power to regulate depreciation rates of telephone companies except by prescribing a rate administratively determined by the Commission itself. A direction that the Commission, as soon as practicable, prescribe depreciation rates, is hardly to be read as authority to permit the telephone companies to fix the rates for themselves in defiance of state power. The doubtful constitutionality of the statute if so construed precludes our acceptance of such a construction.

The Commission has thus prescribed no depreciation rates as required by § 20 (5). No exertion of federal authority, through the Interstate Commerce Act, § 20 (5), (6), (7), the orders of the Commission, or otherwise, forbids the making of entries in appellant's accounts or the doing of anything that is by the state commission's order directed to be done. Pending action by the Communications Commission establishing depreciation rates for telephone companies, state control over such rates remains unimpaired. We are not called upon now to consider the effect upon state power of such rates when adopted, or, in view of the state of the record, to consider other objections to the order of the State Commission fixing for appellant a composite depreciation rate of 3½%.

*Affirmed.*