**WASHINGTON GAS LIGHT COMPANY,**
Plaintiff,

v.

**PUBLIC SERVICE COMMISSION OF
the DISTRICT OF COLUMBIA,**
Defendant.

Civ. A. No. 1262-70.

United States District Court,
District of Columbia.

Dec. 7, 1971.

As Modified Feb. 3, 1972.

C. Oscar Berry, Samuel S. Hollingsworth, W. Edward Gallagher, John J. Wilson, William E. Rollow, Washington, D. C., for plaintiff-petitioner.

George F. Donnella, C. Belden White, II, Asst. Corporation Counsels, Washington, D. C., for defendant-respondent.

OPINION AND ORDER

RICHEY, District Judge.

This case came before the Court as a result of a statutory appeal by the Wash-

ington Gas Light Company (WGLCO), pursuant to 43 D.C.Code § 705 (1967), asking the Court to vacate an order of the Public Service Commission of the District of Columbia (PSC) which directed that WGLCO should file with the Commission a revision of its General Service Provisions providing that deposits should not be required from residential customers initially seeking service from the Company. Section 705 of Title 43 of the D.C.Code specifically states the alternatives available to the Court with respect to such an appeal as follows:

"Any such appeal shall be heard upon the record before the Commission, and no new or additional evidence shall be received by the said court. * * * Upon the conclusion of its hearing of any such appeal the court shall either dismiss the said appeal and affirm the order or decision of the Commission or sustain the appeal and vacate the Commission's order or decision. In either event the court shall accompany its order by a statement of its reasons for its action, and in the case of the vacation of an order or decision of the Commission the statement shall relate the particulars in and the extent to which such order or decision was defective."

Upon the consideration of all the documents, including the transcripts of the hearings before the PSC and miscellaneous correspondence, the hearing memoranda, and the arguments of counsel for the respective parties, the Court concludes that said appeal should be dismissed, and that the order of the PSC should be affirmed.

Basically, the appeal raises two primary issues for this Court's consideration:

1. Whether the Commission's Order No. 5420 was issued as a result of a proceeding that was without due process of law and in violation of the Commission's own rules because of alleged lack of notice with respect to an initial no deposit requirement contained in said order?

2. Whether the Commission's Order No. 5420 was unreasonable, arbitrary and capricious?

## NOTICE

In order to resolve the first issue involving proper notice, the Court believes it necessary to trace the order of events leading up to the Commission's Order No. 5420. On February 29, 1968, the Neighborhood Advisory Council and Consumer Action Committee of the Washington Urban League filed a complaint before the Public Service Commission, which set forth various allegations concerning the credit and deposit policies of WGLCO. This case was designated Formal Case No. 533. Subsequently, PSC on June 28, 1968, issued Order No. 5178 directing that a hearing be held and that the Company present evidence on the following issues:

1. A description of its credit and deposit policies and practices, particularly as they would affect low-income customers.

2. A discussion of WGLCO's views as to why the policies and practices are in the public interest.

3. A discussion of whether a deposit should be required at all or whether a minimum uniform deposit would suffice. *See* PSC Order No. 5178 at 3.

On July 9, 1968, three days of hearing commenced and upon their conclusion, WGLCO renewed a previous motion it had made to dismiss the complaint. On December 20, 1968, PSC issued Order No. 5198 dismissing the complaint, but stating emphatically that it was not terminating its inquiry relative to the policies of WGLCO concerning deposits. The reason for continuing its inquiry regarding deposits was stated as follows:

"Our overriding responsibility is the protection of the public interest. We cannot simply regard this as an adversary proceeding in which our sole function is to determine whether a specific factual allegation has been proven. We must examine the record as a whole to determine whether any action in the public interest is called for by the evidence before us. Scenic Hudson Preservation Conf. v. FPC, 354 F.2d 608, 620 (2d Cir. 1965), cert. denied [Consolidated Edison Co. of New York, Inc. v. Scenic Hudson Pres-

ervation Conference], 384 U.S. 941 [86 S.Ct. 1462, 16 L.Ed.2d 540] (1966)." PSC Order No. 5198 at 3.

The PSC Order No. 5198 then stated:

"We should perhaps begin our discussion of these policies and practices with the very broadest question which could be raised: Is it just and reasonable to have any requirement whatever for deposits? On this question, the answer is abundantly clear. Deposits can reasonably be required in appropriate cases by the Company." PSC Order No. 5198 at 3.

On the next several pages of the Order the PSC discussed the deposit practices of WGLCO, and it noted that the deposits were required in two situations: (1) in some cases upon initial request for service; and (2) for continuation of service where problems of non-payment arose. The PSC agreed with WGLCO's requirement of a deposit in the second instance, i. e. where the customer maintained a faulty payment record, and it concluded that deposits could and should be required based on WGLCO's credit experience with its customers. *See* PSC Order No. 5198 at 4. The PSC then considered the circumstances in which WGLCO required a deposit from a residential customer upon an initial request for service. The PSC states in its Order:

"We see nothing basically objectionable about establishing categories of customers in which the establishment of credit is presumed. The Company receives a very large number of initial requests for service annually, and a requirement that an individual credit check be made for each and every one would be burdensome and unnecessary. Exempted categories must, of course, have a reasonable relationship to the criterion in question, i. e., the satisfactory establishment of credit. This would mean that the Company must have a justifiable expectation that persons falling into these categories will pay their debts to the Company. We see nothing inherently wrong with the categories described above. They are tied in some measure to indicia of financial responsibility and stability in the community. Moreover, they seem to work reasonably well since the amounts charged off as uncollectible are less than one half of one per cent of annual revenues." PSC Order No. 5198 at 6.

However, then the Order states:

"Nevertheless, we think this present procedure is deficient, not in defining the categories from whom no deposit is required, but in its treatment of those who do not fall clearly into those categories. * * * We think that, where a deposit is to be required, a more detailed inquiry into 'other evidence of good credit or stability in the community' than that described in Mr. Blincoe's testimony should be undertaken. Specifically, we think that in those cases where the person seeking service does not fall into an exempt category, the Company, before requiring payment of a deposit, should ask for and check out credit references and should, where possible, undertake a credit check with appropriate mercantile agencies. The important point is that a deposit should only be required where there are sound reasons for concluding that the risk of non-payment exists. This conclusion cannot be based wholly upon the application of external criteria. It should include a specific inquiry into the customer's own circumstances and credit history.

While the credit check is being made, however, the Company will provide service and, should a deposit be found to be required, the Company may enforce such reasonable rules as are required to collect such deposit." PSC Order No. 5198 at 7.

Finally, the PSC in Order No. 5198 listed certain directives and required WGLCO to indicate in writing those directives in which it acquiesced and to show cause as to the remainder why it should not acquiesce. Insofar as here pertinent, PSC issued a notice of a hear-

ing directing the WGLCO to show cause why it should not:

"(a) Obtain and check credit references and credit reports on all persons who do not fall into exempted categories listed in Customer Deposit Policy, Company Exhibit No. 1, herein, *before requiring such persons to make a deposit;*

(b) Require deposits only in cases where the aforesaid credit check provides sound reasons for concluding that significant risk of nonpayment exists;

(c) Provide gas service while said credit rating is being obtained and evaluated;

(d) Inform the customer that deposit amounts will be based on standard requirements, as set out in Company Exhibit No. 1, or on actual usage if such statistics are available, whichever is lower. Such deposits, if based on standard requirements, to be subject to review after one year unless clause (e) below applies \* \* \*." PSC Order No. 5198 at 16.

On January 6, 1969, WGLCO asked for an extension in order to respond to the preceding directives, and on January 29, 1969, WGLCO the following statement was issued:

"We have completed our review of directives (a), (b), (c), (d) and (f) of Order No. 5198 in Formal Case No. 533.

Although we fully appreciate the objectives of the Commission in issuing such directives, our findings with respect to their feasibility and costs are such that we do not acquiesce in said directives." *See* Letter to PSC from WGLCO dated January 29, 1969.

A hearing was held on February 12, 1969, and WGLCO presented direct testimony on why it felt it could not comply with the directives regarding deposits. Following the conclusion of the direct testimony, counsel for the intervenor, Neighborhood Advisory Council and Consumer Action Committee of the Washington Urban League, requested a delay in order to prepare for cross-examination. The PSC granted the request, and at the same time granted the intervenor permission to file a request for information from the company in advance of the reconvened hearing as an aid in preparing cross-examination. On June 6, 1969, in Order No. 5390 the PSC ordered WGLCO to produce certain information for use by the intervenor at the final hearing.

A final hearing was held on October 13, 1969, at which time the intervenor was given an opportunity to cross-examine the representative of WGLCO on its deposit practices. On February 6, 1970, PSC Order No. 5420 was issued. WGLCO then filed its application for reconsideration, which was thereafter denied by PSC Order No. 5428. The PSC has suspended the effective date of its Order No. 5420 pending the outcome of the appeal to this Court.

Title 43, Section 410 of the D.C. Code provides as follows:

"The commission shall give the public utility and the complainant, if any, ten days' notice of the time and place when and where such hearing and investigation will be held *and such matters considered and determined.* Both the public utility and complainant shall be entitled to be heard and shall have process to enforce the attendance of witnesses." (Emphasis added.)

WGLCO argues that it has been denied due process because the notice of the October 13, 1969 hearing did not specifically state that initial deposits were being considered. The Court has carefully examined all of the testimony before the PSC in Formal Case No. 533 and the various orders and correspondence, and it concludes that WGLCO was sufficiently aware of the subject matter of the hearing, and, that, therefore, there was no violation of due process. The Orders and the directives within the Orders, clearly indicate that the PSC was considering abolishing the initial deposit requirement. Limiting words and phrases, such as requiring deposits in "appropriate circumstances" and "[w]hile the

credit check is being made, however, the Company will provide service," demonstrates that deposits would only be required in certain circumstances, and that the circumstances would only come about after a credit check. While the credit check was being performed, service was to be rendered without deposit. Only if the credit check showed poor results would a deposit be required. Furthermore, the testimony given at the October 13, 1969 hearing evidences the fact that WGLCO was aware of the no initial deposit issue. The following colloquy substantiates the Court's conclusion:

"CHAIRMAN AVERY: All right. Do you have any rebuttal presentation, Mr. Hollingsworth? Anything further to present to us by way of evidence?

\* \* \* \* \* \*

MR. HOLLINGSWORTH: Mr. Chairman we have some testimony to put on in connection with a question Commissioner Porter raised in the February 12th hearing, which is for the information of the Commission. I think it is a good idea to put it on. It will only take about five or ten minutes.

CHAIRMAN AVERY: All right. Who is going to testify?

MR. HOLLINGSWORTH: Mr. Blincoe.

CHAIRMAN AVERY: *All right. I hope you are not going to raise a whole new set of issues here or anything, Mr. Hollingsworth.* (Emphasis added.)

MR. HOLLINGSWORTH: No, sir.

CHAIRMAN AVERY: What specifically—could you give us the page reference to Mr. Porter's question in the February hearing?

MR. HOLLINGSWORTH: *It seems to me it is toward the latter part of the hearing. What it involved was whether or not a policy of no initial deposit is a practical thing when we do it. We said we would think about it and we never have. So, maybe we ought to—*

MR. DONNELLA: Page 600 in the transcript, I believe, is where that is.

*See* Transcript, October 13, 1969 Hearing, at 756–758.

Mr. Blincoe then testified about the gas company's deposit experiences, and the potential cost of implementing the directives contained in PSC Order 5198 which had been objected to by the company.

There is an abundance of case law on the subject of notice in administrative proceedings. In 1936 the United States Supreme Court disposed of a similar contention as that raised here, i. e., that a commission's notice did not cover the action taken, by stating:

"Appellant argues that throughout these proceedings it was not advised that the commission proposed to make any order with respect to depreciation rates for 1934, or to do more than make recommendations as to the proper depreciation rates to be adopted by the Interstate Commerce Commission for 1935. But it was evident from the opinion and orders of the commission mentioned that it proposed to deal with two aspects of appellant's depreciation accounting.

\* \* \* \* \* \*

Possibility of doubt as to the purpose of the hearing was removed in its course before the commission." Northwestern Bell Tel. Co. v. Nebraska Ry. Comm., 297 U.S. 471, 475–476, 56 S. Ct. 536, 538, 80 L.Ed. 810 (1936).

Other cases supporting the above proposition include: Civil Aeronautics Board v. State Airlines, 338 U.S. 572, 578–581, 70 S.Ct. 379, 94 L.Ed. 353 (1950); Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 440, 50 S.Ct. 220, 74 L.Ed. 524 (1930); Sisto v. CAB, 86 U.S.App.D.C. 31, 179 F.2d 47, 52 (1949); Brahy v. Federal Radio Commission, 61 App.D.C. 204, 59 F.2d 879 (1932); cf. City of Dallas v. CAB, 94 U.S.App.D.C. 175, 221 F. 2d 501, cert. denied, 348 U.S. 914, 75 S. Ct. 295, 99 L.Ed. 717 (1955).

The next issue is whether the notice in the instant case satisfied the requirements of due process for a proceeding where PSC was acting in a quasi-judicial

capacity. For all of the reasons presented earlier in this opinion, the Court concludes that WGLCO had adequate notice of the issues which were before the Commission, and further that it had sufficient time to prepare itself for the proceedings.

## ARBITRARY, CAPRICIOUS, OR ABUSE OF DISCRETION

Title 43, section 411, D.C.Code reads in pertinent part as follows:

"If upon such investigation it shall be found that any regulation, time schedule, act, or service complained of is unjust, unreasonable, insufficient, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of this section * * * the commission shall have the power to determine and substitute therefor such other regulations, time schedules, service, or acts and to make such orders respecting such changes in such regulations, time schedules, service, or acts as shall be just and reasonable. * * * "

The preceding section clearly authorizes the Public Service Commission of the District of Columbia to make such changes in service and credit practices as shall be just and reasonable where, upon investigation, the Commission finds that any service or credit practice complained of is unjustly discriminatory. The Commission made such a finding in PSC Order No. 5420, where it stated:

"The Company apparently would have us reverse our earlier determination that its current practices are deficient. We are not disposed to take that action. We considered the problem carefully before issuing Order No. 5198 and we have considered it further in the light of the evidence presented at the subsequent hearings. We remain convinced that the decision to require a deposit should be based on considerations directly relating to the credit reliability of the customer involved. We further believe that the Company's current practice of setting exempt categories which it will accept as establishing good credit is not by itself inherently discriminatory. However, when the Company fails in those non-exempt cases to make the normal business credit check, it is discriminating. This is even violative of its own 'General Service Provisions' which state that ' * * * a customer shall establish his credit to the satisfaction of the Company * * * ' before receiving service. To us this means that if a customer does not fall into an exempt category, the Company has a duty to make such inquiry as is necessary to determine the credit of that customer. It cannot simply say that a customer does not fit an exempt category and he must therefore pay a deposit." PSC Order No. 5420 at 3–4.

It should also be noted that 43 D.C. Code § 301 (1967) further supports the action taken by the PSC, since it states in pertinent part:

" * * * The charge made by any such public utility for any facility or services furnished, or rendered, or to be furnished or rendered, shall be reasonable, just, and nondiscriminatory. Every unjust or unreasonable or discriminatory charge for such facility or service is prohibited and is hereby declared unlawful. Every public utility is hereby required to obey the lawful orders of the commission created by chapters 1–10 of this title."

The Court has studied the arguments and memoranda of counsel for WGLCO regarding the fact that PSC determined to ban initial deposits despite testimony by a Company witness that this might result in the doubling of uncollectibles. The Court believes that the Commission took this fact into consideration where it stated:

"In exploring the question of whether a deposit is necessary when gas service is first requested, we attempted to get from the company some projection of what its bad debts might be if such a policy obtained. The Company's witness would only speculate on the result, finally stating that he

thought that bad debt losses might double.

There are no viable statistics available on this question, particularly if such a policy is accompanied by a power to require deposits in cases of proven bad credit. With its current deposit policy the Company loses as much per account on accounts without deposits as it does on accounts with deposits. It writes off approximately two accounts without deposit for each account with deposit. If it had a policy under which no deposit was requested when service is first provided, but is required when a customer has proved to be unreliable, perhaps some of the losses now suffered on assumedly good accounts would be avoided. (Footnote omitted.)

All of these facts lead us to question the efficacy of the Company's present practice of requiring deposits upon application for service. That question in turn leads us to think that it would be preferable to have a policy of providing initial service without deposits and requiring a deposit when the customer's own payment record indicates a need for one." PSC Order No. 5420 at 6–7.

The PSC then proceeded to discuss the decision of the Public Utilities Commission of the State of California in the consolidated cases of Nunemaker v. Pacific Telephone & Telegraph Company (Case No. 8735) and Wood v. Pacific Gas & Electric Company (Case No. 8770), 80 P.U.R.3d 129 (1969). These cases involved the institution of a no deposit policy. The PSC pointed out that although there was a rapid rise of bad debts during the period the policy was in effect, the policy failed to make a provision for obtaining a deposit after a customer was determined to be a bad credit risk. PSC Order No. 5420 has remedied this problem by permitting the requirement of a deposit after a bad credit risk has been established under Company standards.

The Court, having considered the testimony at the hearings, the various studies undertaken by the PSC, WGLCO and the

Neighborhood Advisory Council and Consumer Action Committee of the Washington Urban League and which were submitted to the PSC for its consideration, and the California decisions, concludes that the Commission cannot be said to have acted arbitrarily and capriciously as a matter of law in establishing a ban on initial deposits pursuant to PSC Order No. 5420.

Although the Court could conceivably end its opinion at this point, it believes that further comment is appropriate and necessary because of the vast importance and broad implications of this case. More is involved in the instant case than just the settlement of a private controversy, since it has appreciable consequences to the public generally. Where the decision is based on adequate findings, courts are authorized to go much further in order to advance the cause of the public interest, than they would normally be permitted where only private interests are involved.

In this case we have a practice which involves an element in the community which is disadvantaged, and which the Public Service Commission has sought to protect from what appears to be discriminatory deposit practices by WGLCO. Accordingly, to remand this case back to the PSC as has been requested by the gas company would only delay matters, during which time several thousand members of this community would be denied access to a vital utility service. This is not to state that the gas company lacks rights, but those rights must be balanced against the rights of the public generally. The Court is also aware that this decision might result in an increase in the cost of gas service for all users, however, this is merely speculative, and even if it is true, this is one of the burdens members of the community must share in a democratic society. WGLCO is not without a remedy as a result of PSC Order No. 5240, because they can still obtain deposits after a credit check. In effect they are only asked to take a minimal risk while the check is being made. The Court believes that this is

small in comparison to denying service to a certain class of users. The documents submitted for the Commission's consideration indicate that individuals not falling into the exempt categories established by WGLCO had to place deposits ranging from $10.00 to $150.00 in order to obtain gas service. This of course prohibited a substantial number of individuals from getting service. In this era of automation and computers credit checks can be easily conducted at a nominal sum. People must not be forced to be without a necessity of life, simply because of their inability to raise an initial deposit. The Court feels that the Commission's Order No. 5240 was not only correct as a matter of law, but that it commendably removed another discriminatory barrier from the obtaining by a disadvantaged class of an essential utility.

Based upon the foregoing, the Appeal of the Washington Gas Light Company from PSC Order No. 5240 be and hereby is dismissed, and Order No. 5240 of the Public Service Commission of the District of Columbia be and hereby is affirmed.