576 F.Supp. 490 (1983)
NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY
v.
PUBLIC SERVICE BOARD OF VERMONT, V. Louise McCarren, Chairman, Rosalyn L. Hunneman, Board Member, Samuel S. Bloomberg, Board Member.
Civ. A. No. 83-305.
United States District Court, D. Vermont.
December 14, 1983.
*491 Christopher M. Bennett, Boston, Mass., Martin K. Miller, Samuelson, Portnow, Miller & Eggleston, Ltd., Burlington, Vt., for plaintiff.
Thomas N. Wies, Gen. Counsel, Public Service Bd. of the State of Vt., Montpelier, Vt., for defendants.

OPINION AND ORDER
HOLDEN, District Judge.
New England Telephone and Telegraph Company (NET) seeks declaratory and injunctive relief pursuant to 47 U.S.C. § 401(b) (1962) to compel the Vermont Public Service Board (VPSB) to adopt depreciation rates and methods prescribed by the Federal Communications Commission (FCC).
The court originally scheduled a hearing on the request for preliminary injunctive relief on September 1, 1983. The hearing was postponed by stipulation of the parties "to a later date" with the unusual provision that in the event judgment is entered for the plaintiff and the defendants are ordered to approve a rate schedule as requested by the plaintiff  "the effective date of such rates may be set (by means of a surcharge or other method as may be appropriate) as of the same date as would have been fixed had the hearing been held on September 1, 1983."
This stipulation was followed by an agreed statement of facts and extensive written argument. The rescheduled hearing on the request for a preliminary injunction was consolidated with the trial on the merits. Upon consideration of the record presented, the plaintiff has failed to persuade the court that it has jurisdiction to grant the relief requested. The plaintiff's petition for preliminary and permanent injunctive relief must be denied for the reasons stated in this opinion.

Factual Background
The basic facts submitted by written stipulation of the parties is attached as Appendix A to this order. More briefly stated, it appears that on December 14, 1982, the FCC prescribed, pursuant to 47 U.S.C. § 220(b), new depreciation rates and methods[1] applicable to NET's telephone service in Vermont. The parties agree that no appeal was taken from the Prescription Order, and it now has become final. In its order of December 14 the FCC left open the issue of the preemptive effect of its prescription on intrastate telephone rates.
On December 1, 1982 the plaintiff NET filed revised rate schedules with the Vermont PSB to obtain authority to increase telephone rates by approximately $16,500,000 in annual revenues to be derived from intrastate telephone service in Vermont. In support of its justification for the rate increase, NET included increased depreciation expense computed from the application of methods termed Remaining Life (RL) and Equal Life Group (ELG) authorized by the FCC.
The rate proceedings on NET's petition filed December 1, 1982, were concluded by final order of the PSB dated August 11, *492 1983.[2] As noted above, NET had requested the Vermont regulatory agency to allow depreciation expenses charged in the accounting procedures and methods according to prescribed RL and ELG rates approved by the FCC. The Vermont PSB declined the request and applied the Whole Life (WL) method in computing NET's allowable depreciation expense. Had the PSB allowed the depreciation methods prescribed by the FCC for the Bell Companies in calculating NET's annual revenue requirements, the result would have produced an increase of approximately $971,000 over that obtained from the tariffs authorized by the order of August 11, 1983.
In the interim, on December 8, 1982, indeed only one week after the filing of NET's revised tariffs, the FCC prescribed depreciation rates for nine Bell Operating Telephone Companies, including NET, authorizing RL and ELG methods and systems of accounting for depreciation expense. In its order of December 8, 1982 the FCC determined that it had jurisdiction under Section 220(b) of the Communications Act of 1934 (47 U.S.C. § 220(b)). The Commission, however, explained:
We do not decide in this order the effect of our prescribing these rates for intrastate ratemaking purposes. Rather, the preemptive effect of this Commission's accounting and/or depreciation determinations is before us in a separate proceeding initiated by a further Petition for Reconsideration filed by AT & T ... and a Petition for Declaratory Ruling filed by the General Telephone Company of Ohio.
The separate proceedings just referred to in the quoted text were concluded by the FCC in its Memorandum and Opinion and Order, CC 79-105, slip op. at 17 (FCC January 6, 1983), 48 Fed.Reg. 2324, appeal pending sub nom. Virginia Corporation Commission v. FCC, 4th Cir. No. 83-1136. This administrative ruling reconsidered and revised an earlier Prescription Order of April 27, 1982, wherein the FCC determined that Section 220(b) of the Communications Act of 1934 did not preempt inconsistent state depreciation prescriptions.
The second preemption order was issued after public notice of the petitions for reconsideration was published in the Federal Register on June 22, 1982. The notice invited public comments on the respective petitions of AT & T and General Telephone of Ohio. The notice specified that both petitions "relate to the Commission's preemptive jurisdiction under Section 220 (of the Act)." The Vermont PSB received a copy of the public notice, but did not submit comment in the proceedings. The FCC order of January 6, 1983 was served on the Vermont PSB as directed by the Commission. In granting the petition of AT & T and GTE, the Memorandum Opinion and Order states:
We find that the most logical and reasonable interpretation of Section 220(b) of the Act is that where the Commission prescribes depreciation rates for classes of property, state commissions are precluded from departing from those rates. Since the depreciation method utilized is a material part in determining the rate to be applied, state commissions are also precluded from departing from the depreciation methods prescribed by the Commission.... Accordingly, we find that this Commission's depreciation policies and rates ... preempt inconsistent state depreciation policies and rates.
Memorandum Opinion and Order, supra, slip op. at 17.
The Vermont PSB's refusal to heed and apply the FCC precept of preemption in determining NET intrastate charges constitutes the root and stock of the plaintiff's complaint and prayer for equitable relief. Before undertaking to decide the merits of the serious conflict in this sensitive area of competing federal-state regulatory schemes in the interstate-intrastate wire communication field, the court is first *493 called upon to determine the lively question of its jurisdiction to entertain the action. Courts are reluctant to intrude upon the ratemaking function confided to regulatory bodies absent a clear and certain grant of such authority by the legislative branch. "Maintenance of the proper balance between federal and state concerns in this area" requires caution. Public Utilities Commission of California v. United States, 355 U.S. 534, 546, 78 S.Ct. 446, 454, 2 L.Ed.2d 470 (1958) (Harlan, J., dissenting).

Jurisdiction
NET has invoked the court's jurisdiction on the strength of the general provisions of 28 U.S.C. §§ 1331, 1337 and, more specifically, section 401(b) of the Communications Act which concerns enforcement of orders of the FCC. The jurisdictional grant in this subsection specifies:
If any person fails or neglects to obey any order of the Commission other than for the payment of money, while the same is in effect, the Commission or any party injured thereby, or the United States, by its Attorney General, may apply to the appropriate district court of the United States for the enforcement of such order. If, after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such person, or the officers, agents, or representatives of such person, from further disobedience of such order, or to enjoin upon it or them obedience to the same.
47 U.S.C. § 401(b).
The language of the statute plainly confers the power of enforcement on the district court against disobedient persons  "(i)f after hearing, that court determines that the order was regularly made and duly served, and that the person is in disobedience of the same."
For the purpose of Chapter 5 of the 1934 enactment regulating wire and radio communication, under the table of definitions, Congress provided in 47 U.S.C. § 153(i):
"Person" includes an individual, partnership, association, joint-stock company, trust, or corporation, ....
In a succedent subsection, the lawmakers took the pains to specifically define state commission.
"State commission" means the commission, board, or official (by whatever name designated) which under the laws of any State has regulatory jurisdiction with respect to intrastate operations of carriers.
47 U.S.C. § 153(t).
Although the dynamic nature of the communication industry has brought about various statutory changes under the rubric prescribing definitions, only the 1968 amendment relates to state commissions. Subsection (e), Pub.L. 90-299. This introduced a minor textual change to accommodate the proscription against harassing interstate telephone calls provided in 47 U.S.C. § 223; Pub.L. 90-299. In making this change, the Congress restated the essential definition of "interstate communication" to mean communication or transmission 
between points within the United States, but through a foreign country; but shall not, ... include wire or radio communication between points in the same State, Territory, or possession of the United States or the District of Columbia, through any place outside thereof, if such communication is regulated by a State commission.
47 U.S.C. § 153, as amended subsection (e) Pub.L. 90-299.
This facet of the statutory scheme is entirely consistent with the unequivocal expression in the 1954 Amendment to the Act that
"... nothing in this chapter [5] shall be construed to apply or to give the Commission [FCC] jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or *494 in connection with intrastate communication service by wire or radio of any carrier...."
47 U.S.C. § 152(b).
The jurisdictional boundary between state and federal regulatory power is not subject to precise location. In North Carolina Utilities Commission v. F.C.C., 537 F.2d 787, 793 (4th Cir.1976). Judge Hastie's opinion points up the difficulty:
We have no doubt that the provisions of section 2(b) [47 U.S.C. § 152(b)] deprive the Commission of regulatory power over local services, facilities and disputes that in their nature and effect are separable from and do not substantially affect the conduct or development of interstate communications. But beyond that, we are not persuaded that section 2(b) sanctions any state regulation, formally restrictive only of intrastate communication, that in effect encroaches substantially upon the Commission's authority under sections 201 through 205.
quoted with approval in New York Telephone Co. v. F.C.C., 631 F.2d 1059, 1066 (2d Cir.1980) (Oakes, J.). The exact location of the dividing line between the federal ratemaking function in interstate charges and state regulatory powers in dealing with intrastate charges as affected by the prescription of rates of depreciation was left partly unattended in Northwestern Bell Telephone Co. v. Nebraska State Railway Commission, 297 U.S. 471, 56 S.Ct. 536, 80 L.Ed. 810 (1936). And as noted earlier, the order of the Commissioner at issue here is now before the circuit court of appeals for the fourth circuit and presently is unsettled.
Although the FCC has now undertaken to regulate in the area, its authority to do so has not yet been judicially reviewed. Putting aside useless efforts to forecast the final outcome, this court is unable to assign a legislative intent on the part of the Congress to confer authority on the several district courts to enforce rule making on the part of the FCC against the Vermont Public Service Board on the strength of an expanded definition of "person" that clearly reaches beyond the language of section 3 of the Act [47 U.S.C. § 153(i)]. Such a construction would call upon the federal district courts to intrude upon the delicate and complex telephone separation procedures that are entirely in the domain of the federal and state regulatory agencies under the provisions of 47 U.S.C. § 410 (as amended 1971). See New York Telephone Co. v. F.C.C., supra 631 F.2d at 1062.
The legislative history of the 1971 amendment entitled Federal-State Communications Joint Board Act illumines the separation problem. It outlines the special care and caution heeded by the Congress in undertaking to deal with the delicate balance in this particular area of federalism.
The purpose of [the] legislation ... [was] to establish a Federal-State Joint Board to consider matters regarding jurisdictional separation of communications common carrier property and expenses between interstate and intrastate operations. It would establish a procedure whereby both Federal and State representatives participate in separations proceedings which were previously considered primarily at the Federal level, but it would retain in the Federal Communications Commission superintendence of the regulation of interstate telephone rates.
. . . . .
Telephone utilities, however, are subject both to Federal and State regulation. The Federal Government regulates interstate carrier services while the States exercise jurisdiction over intrastate toll and local exchange services. While the jurisdictions are separate for interstate and intrastate services, the plant facilities are to a great extent the same for both. The household telephone instrument, for example, is the same whether the call is made intrastate or interstate. Thus, in order for each jurisdiction effectively to exercise its authority, procedures are needed to apportion the costs for services under each jurisdiction.
Separation of costs for each jurisdiction is not subject to precise definition. *495 Nevertheless, the allocations of costs must be reasonable, i.e., the rate base for each jurisdiction must have appropriate correlation to the different uses of the commonly used plant. See Smith v. Illinois Bell Telephone Co., 282 U.S. 133 [51 S.Ct. 65, 75 L.Ed. 255] (1930); Minnesota Rate Cases, 230 U.S. 352, 435 [33 S.Ct. 729, 755, 57 L.Ed. 1511] (1913). Accordingly, the Commission is not free arbitrarily to determine the rate base, but rather, it must first ascertain the plant costs and expenses upon which to base interstate telephone rates.
1971 U.S.Code Cong. & Ad. News, 1511, at 1512.
The federal lawmakers clearly recognized the problem presented in this action:
Although the States regulate, in the aggregate, 70 percent of Bell's plant investment, no one State has jurisdiction over as much as the approximately 30 percent regulated by the Federal Communications Commission, and the interests of the various States can be different. More importantly, the Federal Government preempts the States in the area of Federal jurisdiction. Thus, if the Commission declares its rate base to include certain costs, these costs are not used in determining a State's rate base; conversely, if the Federal Communications Commission does not use certain costs, the State may be left with these costs in determining its rate base  and correspondingly higher rates for local services to the local consumer.
The determination of the rate base at the Federal level then, has a strong relation to the rates which are charged at the local level. Accordingly, the proceedings for establishing the separations of plant and expenses at the Federal level have invoked great concern among the States as manifested by the interest expressed by the National Association of Regulatory Utility Commissioners (NARUC).
Id. at 1513.
The Senate Report on the proposed legislation (H.R. 7048) that was enacted as P.L. 92-362 concludes:
The procedures for setting jurisdictional separations of costs and expenses for interstate and intrastate communications carrier operations should be decided with both Federal and State participation. The provisions of H.R. 7048 would achieve the purpose of joint participation without abandoning Federal superintendence in the field.
Id. at 1515.
A notable aspect of the historical background is the traditional cooperation that has prevailed in the relations between the FCC and the state regulatory commissions through the National Association of Regulatory Commissioners (NARUC) by way of "continuing surveillance" procedure in effect since 1941. A central theme of the legislative history is one of federal-state cooperation. It may be that the thread is strained, if not broken, by the divestiture of the Bell System.
Other than the clear intendment to preserve the "Federal superintendence in the field," neither the history nor the language of the Communications Act of 1934, as amended, justifies equating a "state commission" as defined in 47 U.S.C. § 153(t) to a "person" beyond the definition given in the preceding subsection (i). To include a state regulatory agency within the category described in the words "an individual, partnership, association, joint stock company or corporation" offends the traditional canon of statutory construction expanding the general terms beyond the specific words which follow. The statutory scheme offers no suggestion that the provision of 47 U.S.C. § 401(b) was designed to make injunctive relief available against a state regulatory agency at the instance of a regulated carrier who asserts it is aggrieved by the state ratemaking process.
The force and effect of the present action is to invoke the court's jurisdiction to strike down a depreciation expense allowed on intrastate plant that is inconsistent with the depreciation rates and methods prescribed by the FCC. The court is constrained against the exercise of such awesome *496 power in the absence of a clear and explicit grant from the Congress.
The court recognizes that there is authority worthy of careful consideration to the contrary that has afforded equitable relief against state agencies as persons within the jurisdiction conferred by 47 U.S.C. § 401(b). E.g. New England Telephone and Telegraph Co. v. Public Utilities Commission of Maine, 570 F.Supp. 1558 (D.Me.1983) (Carter, J.), appeal docketed, No. 83-1779 (1st Cir. Oct. 21, 1983); South Central Bell Telephone Co. v. Louisiana Public Service Commission, 570 F.Supp. 227 (M.D.La.1983); Pacific Northwest Bell Telephone Co. v. Washington Utilities and Transportation Commission, 565 F.Supp. 17, 21 (W.D.Wash.1983); Chesapeake and Potomac Telephone Co. v. Public Service Commission, 560 F.Supp. 844 (D.Md.1983). See also New England Telephone and Telegraph Co. v. Public Utilities Commission of Maine, 565 F.Supp. 949 (D.Me.1983) (Cyr, J.) (temporary restraining order denied as not within section 401(b).
After due consideration of these precedents, the court declines to follow. In my view the statutory scheme, as outlined by the history of the Act, presents a barrier at the threshold of this controversy which precludes the equitable relief prayed for in the complaint. Whether the jurisdictional barrier which the court perceives is removable at the instigation of the FCC is a question not presented in the present action.[3]
Unlike the review called for in the appeal presently pending in the Fourth Circuit, Virginia Corporation Commission v. F.C.C., supra, this court is not called upon to determine the jurisdiction of the FCC to enter the preemption order of December 8, 1982. Nor is it the immediate judicial concern whether the FCC may change its policy of deferring to state ratemaking jurisdiction where the deferment would produce a collision between the state and federal ratemakers in dealing with national separations procedures. See New York Telephone Co. v. F.C.C., supra, 631 F.2d at 1065. The immediate question is the power of this court to enforce the federal depreciation rate at the request of an intrastate carrier claiming to be unjustly treated by the Vermont PSB in its disallowance of this particular operating expense during the pendency of the Virginia Commission petition for review under section 402 of the Act. The court is persuaded that the exercise of such drastic equitable power must await a clear and unclouded statutory authorization to perform this function.
Quite predictably, the petition for review now pending on appeal in Virginia Corporation Commission v. F.C.C. will clarify much of the uncertainty in this complex area. In the interim, the court is not persuaded that it has the judicial power to interdict the ratemaking authority of the Vermont Public Service Board to provide increased operating revenues which the state has disallowed.[4]
Accordingly, the court concludes it is without authority to grant the plaintiff's request for preliminary injunctive relief against the Vermont Public Service Board under the provisions of 47 U.S.C. § 401(b). *497 The motion of New England Telephone and Telegraph Company for a preliminary injunction is denied.
It is so ORDERED.
The court's opinion written above includes the findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure.
NOTES
[1] The new depreciation methods are called Remaining Life (RL) and Equal Life Group (ELG) which permit accelerated cost recovery.
[2] In re Petition of New England Telephone and Telegraph Company for a 19.2% Overall Increase in Rates, Nos. 4751, 4752, 4762 (August 11, 1983), appeal docketed, No. 83-602 (Vt.Dec., 1983).
[3] 47 U.S.C. § 401(c) as amended 1974 provides:

(c) Upon the request of the Commission it shall be the duty of any United States attorney to whom the Commission may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States all necessary proceedings for the enforcement of the provisions of this chapter and for the punishment of all violations thereof, and the costs and expenses of such prosecutions shall be paid out of the appropriations for the expenses of the courts of the United States.
[4] The court, of course, is mindful of its recent decision in Town of Springfield v. McCarren, 549 F.Supp. 1134 (D.Vt.1982), aff'd 722 F.2d 728 (2d Cir. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 360, 78 L.Ed.2d 322 (1983). Summary judgment was entered under 28 U.S.C. § 1332, granting declaratory relief against the members of the Vermont Public Service Board pursuant to 28 U.S.C. §§ 2201-02. It was there adjudged that the Vermont PSB exceeded its authority by undertaking to assume jurisdiction in an area that the Federal Power Act exclusively granted to the Federal Energy Regulatory Commission.